Norfolk and New Brunswick Hosiery Co. *v.* Arnold.

---

THE NORFOLK AND NEW BRUNSWICK HOSIERY COMPANY

*v.*

ANNA M. ARNOLD AND SATTERLEE ARNOLD.

1. A person who, for more than four years, has had the exclusive use of a machine, and has, for all that time, tested it by actual use, is in a position where he cannot be deceived by false representations as to its capacity or efficiency, for his use of the machine has given him all the knowledge respecting its capacity and efficiency that anybody can have.

2. A promise to make an invention or a new discovery, whereby a defective mechanical instrument shall be perfected or made more efficient, is not a fraud, though never performed. Such a promise is not the assertion of a fact, but amounts to a mere expression of an opinion in relation to a matter about which there can be no such thing as certainty.

3. A party defrauded in a bargain may, on discovering the fraud, do one of two things—he may rescind and demand back what he has parted with, or he may affirm the contract and sue for damages. If he elects to rescind, he must do so as soon as circumstances permit after the discovery of the fraud. He cannot speculate on the chances and wait until he can see whether it will be most to his advantage to rescind or abide by the contract.

4. Equity can only help the diligent; it discourages laches and neglect.

---

On motion to dissolve an injunction, heard on answer and affidavits, and bill and affidavits.

*Mr. Gilbert Collins* and *Mr. Francis E. Blackwell* (of New York), for the motion.

*Mr. William T. Day* and *Mr. Walter D. Edmonds*, contra.

Norfolk and New Brunswick Hosiery Co. *v.* Arnold.

VAN FLEET, V. C.

The question now before the court is, whether an injunction heretofore granted in this case shall be dissolved or not. The main object of the suit is to procure a decree declaring that a contract made by the female defendant with the complainant, on the 10th day of April, 1882, was obtained by fraud, and adjudging, for that reason, that the contract is void, and shall be surrendered for cancellation. The contract in question granted to the complainant the exclusive right to use three patents, belonging to the female defendant, in the manufacture of certain articles of merchandise, and also the exclusive right under any other patent, which had been, or might thereafter be, granted during the continuance of the contract, to the female defendant or her husband, for any invention whatever appertaining to or useful in making any kind of underwear for human beings, and also the exclusive right to use a sewing machine called the anchor-stitch sewing machine. For the rights so granted, the complainant agreed to pay the female defendant an annual royalty of $12,000 in semi-annual ·payments. The royalty, at this rate, was to commence on the 1st day of January, 1883, and cease on the 22d day of November, 1898. At the latter date the contract will expire by its own limitation. All of the royalties which fell due prior to January last, 1891, have been paid, except about $10,000. To collect those which remained unpaid, the female defendant brought a suit against the complainant in the Supreme Court of New York, for Queen's county, in February, 1891. The injunction sought to be dissolved restrains the further prosecution of this suit. Both parties are citizens of this state.

The fraud on which the complainant rests its right to have the contract annulled consists entirely in false representations alleged to have been made by the male defendant, while acting as the agent of the female defendant in negotiating the contract. No fraud, perpetrated by her own personal speech or act, is imputed to the female defendant. If any misrepresentations were made, the bill shows, on its face, that they were made by the agent and not by the principal. The power delegated to the agent is not shown. There is no proof of the scope ·or extent of his agency.

In this posture of affairs, it might, under other circumstances, be a question worthy of very careful consideration whether the case made by the bill is not, in this respect, so radically defective as to lay no foundation whatever for relief against the female defendant. For present purposes it will, however, be assumed that the representations, alleged to be false, were made by her authority, and that she is responsible for them.

Two kinds of misrepresentations are charged. The first consists of statements alleged to have been made by the male defendant, respecting the action of the patent office at Washington, on applications for patents which he had previously made, and which were still pending there when the contract was negotiated. None of these statements are shown to be false. The complainant, in fact, admits that it was impossible for it, when its bill was filed, to show that they were false, for it says that, until the issue of letters patent, the records of the patent office, respecting a pending application, are kept secret from all persons except the applicant. For present purposes, this branch of the complainant's case may, therefore, be dismissed without further remark. It constituted no part of the ground on which the injunction was granted.

The second class of misrepresentations consists of statements charged to have been made respecting the capacity and efficiency of a sewing machine. One of the patents, which the contract gives the complainant an exclusive right to use, is for an improvement in the mode of uniting the edges of knitted goods. The bill calls this device on anchor-stitch seam. The parties, in making the contract, unquestionably dealt on the basis that this seam was to be made by a sewing machine. The male defendant, while negotiating the contract, claimed that he had invented a sewing machine that would apply this stitch in making the seam. The contract calls this machine an anchor sewing machine, and by it the female defendant bound herself to furnish to the complainant, at a reasonable price, as many such machines as it might desire, the machines to be returned to her on the termination of the contract. The complainant's whole case, so far as its right to an injunction is concerned, rests exclusively upon false

representations alleged to have been made respecting this machine. The bill avers that it was represented to the complainant, during the negotiation of the contract, that the male defendant had completely invented a sewing machine, designated as an anchor sewing machine, which was practically operative and capable of producing the anchor-stitch seam in the usual and ordinary course of manufacture, and that with such machine the operatives of the complainant could, in the regular course of its manufacture of underwear, make this seam with greater commercial economy, profit and success than by any other method of seaming and stitching then in use by the complainant. The complainant denounces each of these representations as false. It further says that for more than four years it faithfully tried to practically and successfully operate the defendants' machine, but that the machine finally proved utterly incompetent to make good the representations which had been made concerning its capacity and operativeness. The complainant states as the reason which induced it to experiment with the machine, and to keep it on trial for so long a period as four years, was, that the male defendant, for all that time, kept promising that he would, very soon, by a new invention or discovery, perfect the machine in the respects in which it was defective and make it do all that it had been represented it would do. But the complainant says that the machine never could do what it was represented, when the contract was made, that it would do, and that nothing the defendants have since done to it has so changed or improved it as to make it competent to do the work successfully which it was represented it would do. The result is, as the complainant says, that both the patented stitch and the machine are worthless.

It is thus seen that the foundation upon which the complainant rests its right to relief is, that it was induced to enter into the contract, which it seeks to have annulled, by fraudulent representations made concerning, to use the language of the bill, the capacity and operativeness of the sewing machine which the female defendant agreed to furnish to the complainant. I shall not stop to consider whether the material averments of the bill, constituting this branch of the case, are fully proved or not, but

shall, for the purposes of this discussion, assume that they are.
A simple reading of the bill will, even if it is read carefully,
lead the reader to believe that the complainant, when it made the
contract, knew nothing about the machine, nor about its capacity
or efficiency, except what it obtained from the defendants' repre-
sentations. This, however, is not the fact. From the answer
and proofs of the defendants it appears, and the fact is now
entirely free from dispute, that the complainant had used the
machine for more than a year prior to the making of the con-
tract. It had had the exclusive use of it for all that time, and
had, for such use, paid a much larger royalty than the contract in
question requires it to pay. So that it would appear to be well-
nigh undeniable that the complainant had, by practical test and
use, before the contract was made, acquired all the knowledge
concerning the machine that it was possible to acquire. Its
knowledge of the machine was as thorough, complete and per-
fect as that of the defendants. In view of this fact, it is not
possible for me to believe that the complainant made the contract
relying at all on any representations which had been made as to
what the machine was, or what it could do, for, after using it for
so long a time, and after testing it so thoroughly by actual use,
it is manifest that the complainant knew as much about the
machine as it was possible for anybody to know. It knew per-
fectly well whether what the defendants said about it was true
or false. It was in a position where it could not be deceived as
to what the machine was, or what it would do—where its own
knowledge placed it beyond the power of deception. ·

If the machine, at the time the contract was made, was defect-
ive in any respect, and the complainant was induced to enter
into the contract because the male defendant promised that he
would, by a new invention or discovery, to be made in the future,
remove such defect and perfect the machine, such promise, though
never performed, cannot be made the basis of an action against
the female defendant, nor would the failure of the other defend-
ant to keep his promise be a fraud. Such an affair possesses
none of the essential elements of a fraud. A promise of that
kind would not be the assertion of a fact, but must, from its

very nature, be regarded as the mere expression of a belief. The rule laid down by Chief-Justice Shaw, in *Page* v. *Bent, 2 Metc. 371, 374*, and adopted by the supreme court, in *Conlan* v. *Roemer, 23 Vr. 53, 56*, declares the law on this subject. The chief-justice said : " The principle is well settled that if a person makes a representation of a fact, as of his own knowledge, in relation to a subject-matter susceptible of knowledge, and such representation is not true ; if the party to whom it is made relies and acts upon it, as true, and sustains damage by it, it is a fraud and deceit, for which the party making it is responsible. But in a matter of opinion, judgment or estimate, if one states a thing as of his own knowledge, if he in fact believes it, and it is not intended to deceive, it is not a fraud, although the matter thus stated is not in fact true. The reason is, that it is apparent, from the subject-matter, that what is thus stated, as knowledge, must be considered and understood by the party to whom it is addressed as an expression of strong belief only, because it is a subject of which knowledge, in its strict sense, cannot be had." From this statement of the law, it appears to be very plain that a promise to make a new invention, or a new discovery in mechanics, can in no sense be regarded as the assertion of a fact, but must be looked upon, both in law and in fact, as the simple expression of an opinion in relation to a matter about which there can be no such thing as certainty until the fact stands accomplished. For these reasons, it seems to be entirely clear that the injunction should be dissolved.

But there is another reason, of equal force, leading to the same result. If it had been established that the contract had been procured by fraud, still, on the facts now before the court, it is clear, according to well-established principle, that the complainant, by its laches, has lost all right to have the contract annulled on that ground. The contract was made and signed on the 10th day of April, 1882, and the bill in this case was not filed until March 13th, 1891, so that nearly nine years elapsed between the time when it is alleged the fraud was committed and the time when relief is first sought against it. As already stated, the complainant had used the machine for more than a year prior to

the making of the contract.    It is admitted that eighty machines were delivered to it by the defendants very soon after the contract was signed, and it says, by its bill—

" that for more than four years your orators faithfully tried to practically and successfully operate said machines in the production of said seam, but that said machines, and each of them, finally proved utterly incompetent to make good the aforesaid representations concerning their capacity and operativeness."

If the machine would not do what the defendants had represented it would do, and the complainant was thereby deceived, it must necessarily have discovered that fact very soon after the machine was put in operation.    It is as certain as anything can be that it did not require four years, nor even four months, to find out whether or not it would do what it had been represented it would.    If the complainant found that it had been deceived, and desired to rescind the contract for that reason, it was bound to act promptly on the discovery of the fraud.    The law will not tolerate delay in such cases.    The defrauded party cannot speculate on the chances and wait until he can see whether it will be most to his advantage to rescind or abide by the contract.    Mr. Justice Van Syckel, in *Conlan* v. *Roemer*, already cited, said, in substance, that a party defrauded in a bargain may, on discovering the fraud, either rescind the contract and demand back what has been received under it, or he may affirm the bargain and sue for damages for the fraud.    If he elects the former course, he must not sleep upon his rights, but must move promptly.    He must rescind as soon as circumstances permit, and must not go on with the contract, after the discovery of the fraud, so as to increase the injury necessarily caused to the fraudulent party by the rescission.    And Professor Parsons, in stating the same rule, says, in substance, that the mere lapse of time, if it be considerable, goes far to establish a waiver of the right to rescind; and, if it be connected with an obvious ability on the part of the defrauded person, by the exercise of ordinary vigilance and care, to discover the fraud at a much earlier date than he says the discovery was made, the delay will constitute an almost conclusive

waiver of the right to rescind. *2 Pars. Cont. (7th ed.)* 782. The subject of this contract calls for the most rigorous enforce- ment of this rule. Its principal subject, the one in respect to which it is alleged that the fraud was committed, is a machine. It is a matter of common knowledge that such instruments are, in this age when such wonderful progress in inventions is being made, constantly being changed and improved. A machine which to-day is the best and the most valuable of its kind ever made, may, by a patentable improvement made to-morrow, be rendered of little or no value without the improvement. The uncertainty respecting the future value of such an instrument may constitute a very strong reason why such a contract, as that which the complainant has made, should not have been made, but it is unworthy of the least consideration on application to annul such a contract. By the contract the complainant acquired an exclusive right to the sewing machine of the defendants, and also of any improvement that might be made in it by the defend- ants. So long, therefore, as the complainant stood by the con- tract, the defendants could derive no benefit from the machine except such as they took under the contract. In this situation of affairs nothing can be plainer, as a matter of simple justice and fair dealing, than that the complainant was required, if it believed that it had been defrauded, to exercise its right to rescind with the utmost promptness, so that the defendants might be put in a position where they would have the right to make some other disposition of their machine. If the complainant had rescinded within a short time after the contract was made, it may be that the defendants could then have made an arrangement with another person for the use of the machine, which would have resulted in their getting a larger royalty than that which they are entitled to under the complainant's contract. The com- plainant's great delay may have inflicted injuries upon the female defendant which can be neither seen, appreciated nor measured now. Equity can only help the diligent. The principle laid down by Lord Camden, more than a century ago, is still the guide of the court in cases where the party seeking its aid has been guilty of great delay. He said : "A court of equity, which

·is never active in relief against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this court into activity, but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing; laches and neglect are always discountenanced." *Smith* v. *Clay, 3 Bro. Ch. C. 639, note.*

The injunction will be dissolved, with costs.