MARJORIE A. LAVIN, APPELLANT, v. BOARD OF EDUCATION
OF THE CITY OF HACKENSACK, RESPONDENT.

Argued February 8, 1982—Decided June 24, 1982.

146

*Louis P. Bucceri* argued the cause for appellant (*Bucceri & Pincus,* attorneys; *Louis P. Bucceri* and *Gerald M. Goldberg,* of counsel; *Louis P. Bucceri* and *Gregory T. Syrek,* on the briefs).

*E. Gerard McGovern* argued the cause for respondent.

*Jaynee LaVecchia,* Deputy Attorney General, argued the cause for respondent State Board of Education (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* former Assistant Attorney General, of counsel).

*Paula A. Mullaly,* Associate Counsel, submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Christine D. Weger,* General Counsel, attorney).

The opinion of the Court was delivered by

SCHREIBER, J.

This case involves the retroactivity of a school teacher's claim for employment credit for military service rendered long before the teacher's employment began.

Petitioner, Marjorie A. Lavin, served in the Armed Forces between January 2, 1943 and October 20, 1945. Twenty-three years later she was hired as a teacher by the Hackensack Board of Education. Because of her military service, she was at that

time entitled to employment credit pursuant to *N.J.S.A.* 18A:29–11, which reads in pertinent part:

> Every [teacher] who after July 1, 1940, has served ... in the active military or naval service of the United States ... in time of war ... shall be entitled to receive equivalent years of employment credit for such service as if he had been employed for the same period of time in some publicly owned and operated ... school or institution of learning ... except that the period of such service shall not be credited toward more than four employment or adjustment increments.

When translated into wage increments, these service credits would affect a teacher's salary. *See N.J.S.A.* 18A:29–8. A teacher is entitled annually to an employment increment until the maximum salary is reached. For example, a teacher with one year's military service would be treated as if he or she had completed one year of teaching.

Petitioner did not claim credit for the military service when her employment began. It was not until October 14, 1977, nine years later, that she wrote to the Superintendent of Schools of the Hackensack Board of Education. Receiving no relief, she filed a petition with the Commissioner of Education. The Commissioner found in her favor and awarded her $20,575 based on three years' military credit for salary claims retroactive to her initial employment in 1968.

Upon appeal, the State Board of Education held that the retroactive claim was limited by the six year statute of limitations and was barred in its entirety for the period of time prior to September 1978 on the basis of laches and estoppel. However, the State Board awarded petitioner two years' military service credit to be applied beginning with the 1978–79 school year. The Appellate Division affirmed, except that it held that petitioner was entitled to three years' credit, 178 *N.J.Super.* 221 (1981). We granted Lavin's petition for certification, 87 *N.J.* 402 (1981), in which she sought review of the applicability of the doctrine of laches and the statute of limitations. We granted the New Jersey School Boards Association leave to file a brief as *amicus curiae*. The Board of Education did not seek review of the Appellate Division's determination of the number of years of

service credit to which she is entitled and that issue is not before us.

The statute of limitations applicable to a "recovery upon a *contractual* claim or liability" is six years. *N.J.S.A.* 2A:14–1 (emphasis added). The core of the issue is whether the credit for military service, *N.J.S.A.* 18A:29–11, is an essential term of the petitioner's employment contract or whether it represents a statutory entitlement granted by the State in return for military service in time of war.

The legal relationship between petitioner and the Board of Education was that of employer and employee and the terms of her employment were embodied in her contract of employment. *Miller v. Board of Chosen Freeholders, Hudson County*, 10 *N.J.* 398 (1952). Petitioner claims that the statute awarding her service credit for time spent in the military was incorporated as a matter of law as a provision in the employment agreement. This would undoubtedly be so if the additional compensation for military service was for work rendered or to be rendered in her position as a teacher.

An example illustrative of that situation may be found in *Miller v. Board of Chosen Freeholders, Hudson County, supra.* A statute enacted in 1938 provided that the minimum salary for prison guards was $2,000 per annum. Miller, who had been a guard since 1931, was being paid a salary of $1,750 per annum at the time the new law became effective. The County continued to pay him at that rate until his death in May 1939. The administratrix of his estate sued in 1949 to recover the shortfall. The Court held that the six-year statute of limitations applied because of the contractual nature of the claim. The statutory provision, requiring that guards were to receive $2,000 minimum annual salary for their work, was deemed to be incorporated in the employment contract and the Court observed that the claim was one for the reasonable value of the services rendered as a guard. Justice Brennan, joined by Justice Heher, dissented. He contended that the salary increase did not result from an

agreement between the parties, but was mandatorily established by the Legislature. Thus the statutory entitlement was something apart from the employment agreement.

Whether the benefit flowing from a statute is to be considered a statutory entitlement or a term of the public employee's contract of employment depends upon the nature of the benefit and its relationship to the employment. Stating the problem in terms of incorporation in the employment contract or as a statutory benefit begs the question. Rather, attention should be directed to the purpose of the statute and its relevance and materiality to the employment.

When tested by this approach the *Miller* result is sound. There the dollars fixed in the statute were directly related to the services to be rendered. The implicit incorporation of such a provision in the employment contract was appropriate, since it went to the essence of the contract, namely, rate of pay for services to be performed. The only purpose of the statute was to fix the pay for prison guards.

This situation is to be differentiated from those in which there is no such nexus. Where the benefit is not directly related to the employment service, but is being awarded for a totally unrelated reason, the recipient is truly the beneficiary of a statutory entitlement quite apart from the employment as such. One could articulate the legal theory that every statutory provision having some effect on the employee has been impliedly incorporated into the contract, so that failure to comply with that provision constitutes a breach of the employment agreement. Yet, when viewed realistically the emolument bears no relationship to the services to be rendered as an employee. That is particularly true in this case.

Certainly the value of petitioner's services as a school teacher is not greater than that of the services of a colleague who had the same training and was teaching the same educational course over the same period of time. There would be no basis from a teaching standpoint for paying a lower salary to the petitioner's twin,

who did not have the same military service. The legislative purpose of *N.J.S.A.* 18A:29–11 is to reward veterans for service to their country in time of war. The reward takes the form of crediting the military service as teaching experience even though there is no functional relationship between the two. The credit has the effect of increasing the number of dollars to which the teacher who is a veteran is entitled. The emolument is not for services rendered or to be rendered for school teaching as such. It was established by the Legislature as a reward or bonus for service in the military, and not for performance as a teacher. Accordingly, the payment should be considered as a statutory entitlement, rather than as an element of the employment contract. That being so, the statute of limitations is inapplicable.

We turn next to the doctrine of laches, an equitable defense that may be interposed in the absence of the statute of limitations. The time constraints of laches, unlike the periods prescribed by the statute of limitations, are not fixed but are characteristically flexible. Pomeroy defines laches as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." 2 *Equity Jurisprudence* § 419, at 171–72 (5th ed. 1941). This expansive notion of laches has been articulated in some of our case law.

In *Atlantic City v. Civil Service Commission*, 3 *N.J.Super.* 57, 60 (App.Div.1949), the court in describing laches quoted the following language approvingly:

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right * * *." 30 *C.J.S.*, § 112, pp. 520, 521.

"Long lapse of time, if unexplained, may create or justify a presumption against the existence or validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that if, plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied; or that plaintiff has assented to, or acquiesced in, the adverse right of defendant;

or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed since the right accrued; or a presumption that the adverse party would be prejudiced by the enforcement of plaintiff's claim." 30 *C.J.S.* § 116 b, p. 538.

*Hall v. Otterson*, 52 *N.J.Eq.* 522, 535 (Ch.1894), adopted the language of a leading English opinion, *Lindsay Petroleum Co. v. Hurd, L.R.*, 5 *P.C.* 221, 239–40 (1874):

... the doctrine of laches in Courts of Equity is not an arbitrary or a technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. But in every case, if an argument against relief, which otherwise would be just, is founded upon mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defence must be tried upon principles substantially equitable. Two circumstances always important in such cases, are, the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy.

▇▇▇ The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs. *Pavlicka v. Pavlicka*, 84 *N.J.Super.* 357, 368–69 (App.Div.1964). The length of the delay alone or in conjunction with the other elements may result in laches. *Obert v. Obert*, 12 *N.J.Eq.* 423, 428–30 (E. & A. 1858).[1] It is because the central issue is

---

[1]Where a legal and an equitable remedy exist for the same cause of action, equity will generally follow the limitations statute. *See Cole v. Brandle*, 127 *N.J.Eq.* 31, 38 (E. & A.1940). Where the equitable cause of action is analogous to the one at law, laches may depend solely on the comparable statute of limitations. See discussion in *Story*, 1 *Equity Jurisprudence* 61–62 (13th ed. 1886).

Because laches is an equitable principle aimed to promote justice, conditions or circumstances may make it inequitable to prosecute a claim after a period shorter than that fixed by the statute of limitations. Thus where there has been an unreasonable delay, laches has been applied to defeat a claim despite the fact that the time fixed by the analogous statute of limitations has not passed. *Patterson v. Hewitt*, 195 *U.S.* 309, 319, 25 *S.Ct.* 35, 37, 49 *L.Ed.* 214, 218 (1904). Even if the cause of action in this case were

whether it is inequitable to permit the claim to be enforced, that generally the change in conditions or relations of the parties coupled with the passage of time becomes the primary determinant. That is why some courts have stated that the mere lapse of time is insufficient, though, as indicated above, that is an overstatement of the principle. Inequity, more often than not, will turn on whether a party has been misled to his harm by the delay. *Norfolk & New Brunswick Hosiery Co. v. Arnold*, 49 *N.J.Eq.* 390, 397 (Ch.1892); *West Jersey Title & Guaranty Co. v. Industrial Trust Co.*, 27 *N.J.* 144, 153 (1958); *Hinners v. Banville*, 114 *N.J.Eq.* 348, 357 (E. & A. 1933). It is with these principles in mind that we turn to the facts of this case.

We agree with the Appellate Division that the doctrine of laches should be applied under the circumstances present here. A claim for petitioner's military service was not made until more than nine years after her employment commenced. Both she and the Board of Education were apparently unaware of the statute.[2] Her military service, which occurred approximately 23 years before she was engaged as a teacher, might well have escaped the attention of the Board. If the parties' ignorance of the statute were the only circumstance, we would probably not invoke the doctrine. However, there are additional important elements.

The Board of Education did not budget for the additional expense, relying as it did on its mistaken belief that petitioner's salary had been correctly computed. This, of course, implicates

---

deemed to be similar to a claim for breach of contract, it would be appropriate to consider the applicability of laches.

[2]The record in the companion case, *Union Township Teachers' Association v. Board of Education of Township of Union*, 90 *N.J.* 161 (1982), discloses that the New Jersey Education Association, an organization representing public school teachers throughout the State, and Boards of Education believed that the statute did not require that the military service credit be applied when the school district had established a salary schedule which exceeded the minimum.

the Board's financial requirements and may have serious tax consequences. The situation is compounded when such budgeting occurred over a nine-year period.

Municipal financing is predicated on a pay-as-you-go principle. *See Passaic v. Local Finance Board of the Department of Community Affairs*, 88 *N.J.* 293, 301 (1982); *Giorno v. Township of South Brunswick*, 170 *N.J.Super.* 162, 166 (App.Div.1979). The governing body must prepare a budget "on a cash basis." *N.J.S.A.* 40A:4–3. This entails a listing of proposed expenditures. By understating its expenses, the Board of Education was innocently reducing the amount of funds to be raised by taxation. This situation was aggravated because the underestimating occurred for ten years. To rectify the error would necessitate including in the current budget the full aggregate amount claimed. This could have the dual effect of causing some other service to be diminished because of the limitations imposed by the Cap law, *N.J.S.A.* 18A:7A–25, and of imposing the complete tax burden on the existing taxpayer for costs that should have been distributed over a ten-year period.

Moreover, this problem should not be viewed exclusively in the context of petitioner's claim. Though in petitioner's case only $20,575 would be due, when other teachers similarly situated are considered, the total cost could be substantial. There are a large number of claims of this nature throughout the State and it is estimated that over $4,500,000 is involved. *See Union Township Teachers' Association v. Board of Education of Township of Union, supra.* This estimate does not include claims of retired teachers on pension and of those who have otherwise left the teaching profession. We believe that it is fair and equitable to treat all claims of this nature in like manner. This bright line treatment has the additional advantage of administrative ease. Under these peculiar circumstances, wherein public entities are involved, petitioner and others situated like her should not be granted retroactive monetary relief. However, they should be

granted credit for qualified military service in computing their salaries subsequent to making their claims.

A somewhat comparable situation arose in *Giorno v. Township of South Brunswick, supra.* There a police officer, who had been employed by the Township of South Brunswick in 1967, sought prior service credit in 1977 for employment as a Middlesex County Park police officer pursuant to *N.J.S.A.* 40A:9–5. The Appellate Division, after observing that municipal governments operated on a cash basis and that it was desirable to have the issue of transferred service credits resolved before employment commences, concluded that it was equitable to allow the claim only from the date of the filing of the complaint. *Cf. Kloss v. Township of Parsippany-Troy Hills,* 170 *N.J.Super.* 153 (App.Div.1979).

We agree with the Appellate Division that laches should bar plaintiff's retroactive recovery of past due sums. We agree with the Appellate Division that it is appropriate to allow prospective application of the petitioner's military credit as of September 1978.

The judgment is affirmed and the matter remanded to the Commissioner of Education for disposition in conformity with this opinion.

PASHMAN, J., dissenting.

*N.J.S.A.* 18A:29–11 provides that any teacher who has served in the military "shall be entitled to receive equivalent years of employment credit for such service." Petitioner Marjorie Lavin was not awarded such credit from the time she was hired in 1968 until 1978 when respondent awarded her the appropriate credit by order of the State Board. Respondent does not dispute that Lavin was improperly denied military credit to which she was entitled. As a result of this denial, she was paid $20,575 less than she should have received.

Lavin filed a petition with the Commissioner of Education seeking payment of the money due her. The only defenses raised were statute of limitations and laches. These are the two issues raised on this appeal. The majority concludes that the six-year contract statute of limitations, *N.J.S.A.* 2A:14–1, does not apply but that petitioner is barred by laches from receiving any of the money improperly denied to her by respondent. I differ with the majority's resolution of both issues.

## STATUTE OF LIMITATIONS

*N.J.S.A.* 2A:14–1 provides a six-year limitation period for "recovery upon a contractual claim or liability, express or implied." If petitioner's claim is contractual, it is subject to the statute; if the claim is statutory, there is no applicable statute of limitations. Conceptually, the legal claim can be placed in either category: without either the contract or the statute, there would be no liability. However, this question has been definitively resolved by prior cases.

In *Miller v. Board of Chosen Freeholders of Hudson Cty.*, 10 *N.J.* 398 (1952), the Court addressed a suit by a prison guard who alleged that he had been paid less than the statutory minimum wage. Construing the predecessor to the current limitations statute, the Court concluded that the suit was covered by the statute. The *Miller* Court explained:

> [T]he present case is clearly within the rule of *Ross v. Bd. of Chosen Freeholders of the County of Hudson*, [90 *N.J.L.* 522 (E. & A. 1917)], under which doctrine the jail guards whose salaries are the basis of this action stand in a contractual relationship to the county, and the provisions of the statute constitute provisions of the contract of employment. [*Id.* at 410]

The majority seeks to distinguish *Miller* by arguing that only where the statutory benefits are "directly related to the employment service," *ante* at 150, is the claim contractual. That distinction, however, finds no support in either the *Miller* decision or subsequent cases construing *Miller.* Rather, we held in

*State v. Atlantic City Electric Co.*, 23 *N.J.* 259 (1957), that the contract statute of limitations applies unless "the liability is dependent *solely* upon statutory provisions." *Id.* at 270 (emphasis added). Further, three Appellate Division panels have held that the contract statute of limitations, as construed by *Miller*, applies to claims such as Lavin's. *Greenwald v. Bd. of Ed., City of Camden*, A–1051–77 (App.Div.1978) (unpublished); *Vitiello v. Bd. of Ed., City of Newark*, A–4822–79 (App.Div.1981) (unpublished); *Lavin v. Hackensack Bd. of Ed.*, 178 *N.J.Super.* 221 (App.Div.1981).

Nor do I understand the reasons underlying the majority's imaginative interpretation of *N.J.S.A.* 2A:14–1 and *Miller.* The majority opinion does not explain why the relation between the statutorily imposed terms of Lavin's contract and the services she performs bears any relevance to the desirability of applying the statute of limitations to her claim. Statutes of limitation "are based on the goals of achieving security and stability in human affairs and ensuring that cases are not tried on the basis of stale evidence." *Zaccardi v. Becker*, 88 *N.J.* 245, 256 (1982); *Galligan v. Westfield Centre Service, Inc.*, 82 *N.J.* 188, 191–92 (1980). It is not clear why these goals are any less important when the statutory benefits are not "directly related to the employment service." Any claim by the majority that its resolution is based on strict construction of statutes of limitation would be wholly disingenuous in light of its aggressive use of the laches doctrine to deny petitioner's claim in its entirety.

## LACHES

I disagree with the majority's application of the equitable doctrine of laches to the facts of this case. Perhaps more importantly, I am concerned about the wide and unprecedented scope the majority position gives to the laches doctrine. Laches has long been applied in an individualized manner in particular cases. Its availability has depended on weighing the peculiar

facts of the case. The majority has transformed laches into an absolute defense against monetary damages for municipalities that disregard their statutory obligations to their employees. The majority pays mere lip service to the long established rule that laches requires a balancing of the equities on both sides, *see ante* at 152, citing *Lindsay Petroleum Co. v. Hurd, L.R.*, 5 *P.C.* 221, 239–40 (1874). Its wholesale approach to laches precludes such balancing.

The ultimate question is whether it is just to allow plaintiff to vindicate this particular legal claim. As in all equitable matters, that determination requires an examination of the conduct of both parties. *Auciello v. Stauffer*, 58 *N.J.Super.* 522 (App.Div. 1959); *Pierce v. International Telephone & Telegraph Corp.*, 147 *F.Supp.* 934 (D.N.J.1957). "[T]he Court must consider the rights of each [party]—of plaintiff to obtain a remedy for an alleged wrong, of defendant not to be sued now, by one whose previous action, or inaction, has misled it. In other words, the court of equity must, as usual, balance . . . the equities." *Pierce v. ITT*, 147 *F.Supp.* at 937. The laches defense "depends upon the facts of the individual case." *Donnelly v. Ritzendollar*, 14 *N.J.* 96, 107 (1953). It is a "question of fact to be determined from all the evidence and circumstances adduced at trial." Dobbs, *Remedies*, § 2.3 at 43–44 n.19 (1973), quoting *Lake Development Enterprises, Inc. v. Kojetinsky*, 410 *S.W.2d* 361 (Mo.App.1966).

The wholesale application of laches to all claims for retroactive military service credit payments in the summary manner sanctioned by the majority here totally belies these basic and long-standing premises. The Court took no evidence to determine why respondent failed to give petitioner the service credit to which she was entitled. Nor did the Court consider whether that failure was knowing and calculated. The Court did not consider how extensively respondent will be prejudiced by the necessity of paying Lavin's statutory entitlement retroactively. How does the amount owed compare to respondent's annual

budget? Will taxes have to be raised? We do not know. Finally, the Court gave no thought to whether respondent's particular duty as a municipality to obey and enforce New Jersey statutes should affect the balance of equities. The only factor considered by the majority is that respondent is a municipality subject to the "cap" laws. This is not equity as I know it.

The majority's rule allows municipalities to escape their statutory obligations simply by ignoring them. If they are caught, they are required to comply with their duties, but retroactive payment of the amounts withheld will never be required because of the hardship of the "cap" laws. By contrast, I believe that municipalities are subject to a greater duty, not a lesser duty, to apply New Jersey law.

Looking at the facts of this case, it appears that both parties were simply unaware of the military credit statute. Petitioner clearly did not knowingly delay her claim in order to injure respondent. Her error was innocent. I assume similarly that respondent did not knowingly deny petitioner her statutory entitlement. However, respondent is charged with knowledge of statutes it is legally obligated to apply. In equity especially, a government entity should not be allowed to hide behind its ignorance of New Jersey statutes binding upon it. As between petitioner, a layperson with no particular knowledge of education law, and respondent, a public entity bound to apply that law, respondent ought to bear the burden of their mutual neglect.

I understand the majority's concern with the fiscal ramifications of allowing retroactive awards here. Ironically, those ramifications are increased dramatically by the majority's erroneous construction of the statute of limitations. Applying the statute as I would, municipalities would be liable only for arrears dating six years· or less prior to the bringing of suit. The floodgates of unlimited municipal liability would not be

open. In specific cases where hardship remains, equity would not be powerless to alleviate the problem. Perhaps, for example, after evidence showing special fiscal hardship, the retroactive payment could be ordered spread over several years. Such a result would be far more reasonable than denying redress altogether.

## CONCLUSION

I would hold that the contract statute of limitations applies to military service credit claims, but that the laches defense should be rejected.[1] Not only would this result be more consistent with New Jersey law, but it would effect a reasonable compromise between petitioner's entitlement and respondent's fiscal constraints. Limiting claims to six years and applying within those years a flexible equitable approach is much fairer than the majority's unbending denial of all liability.

Justice CLIFFORD and Justice HANDLER join in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices SCHREIBER, POLLOCK and O'HERN—4.

*For reversal and remandment*—Justices PASHMAN, CLIFFORD and HANDLER—3.

---

[1]This result would in no way be inconsistent with our decision in *Spiewak v. Bd. of Ed. of Rutherford*, 90 *N.J.* 63 (1982). There, we ordered that our interpretation of the tenure act be applied prospectively only. We denied retroactive relief because respondents had relied on several Appellate Division decisions contrary to our holding. Here, by contrast, there is no "sharp break" in the law. The military service credit statute, *N.J.S.A.* 18A:29–11, is clear and unequivocal, and has not been materially changed since at least the 1950's.

Laches, the issue here, was not raised in *Spiewak*.