**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1557-17T4

JAMES LONG and HOMER
WALKER,

      Petitioners-Appellants,

v.

NEW JERSEY TURNPIKE
AUTHORITY,

      Respondent-Respondent.

_____

Argued February 4, 2019 – Decided March 8, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the New Jersey Turnpike Authority.

Matthew Faranda-Diedrich argued the cause for appellants (Royer Cooper Cohen Braunfeld LLC, attorneys; Matthew Faranda-Diedrich, of counsel and on the briefs; Alexander J. Nassar, on the briefs).

Christopher R. Paldino argued the cause for respondent (Chiesa Shahinian & Giantomasi, PC, attorneys; Ronald L. Israel, Christopher R. Paldino, and Ryan P. O'Connor, on the brief).

PER CURIAM

James Long and Homer Walker (petitioners), two E-ZPass toll violators, filed a petition for rulemaking with the New Jersey Turnpike Authority (NJTA). They had argued that a $50 administrative fee, which N.J.A.C. 19:9-9.2(b) (the regulation) permitted, was excessive and violated N.J.S.A. 27:23-34.3(a) (the authorizing statute). Petitioners now appeal from an October 18, 2017 final decision by the NJTA, which denied their petition for a rule change and related relief.

We reject petitioners' contention that NJTA violated the Administrative Procedures Act (APA), N.J.S.A. 52:14B-4, or notions of due process or fundamental fairness, when it initially promulgated the regulation in 2011, and in 2017, when it considered the petition, but we remand for further proceedings consistent with this opinion.

We therefore affirm in part and remand in part.

I.

In May 2017, approximately six years after NJTA raised the fee from $25 to $50, and almost two years after petitioners had paid their respective fees, they

filed their petition.[1] The petition, entitled "Petition for Rule Change, Refund/Disgorgement and Cause of Action for Unjust Enrichment," challenged the regulation on two grounds. Petitioners' first and primary objection is that NJTA used the fee to generate revenue for its operating fund and that the fee was unrelated to the actual costs of enforcement. They therefore contend that the fee was unreasonable and contravened the authorizing statute. Second, petitioners challenge the use of a fifteen-day notice provision to avoid incarceration and other penalties, which they asserted had violated the authorizing statute. NJTA has since ceased employing this provision.

On appeal, petitioners argue six points, which we have renumbered:

POINT [I]

THE $50 ADMINISTRATIVE FEE SHOULD BE SET ASIDE BECAUSE THE 2011 RULEMAKING PROCESS VIOLATED THE REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURES ACT, AND OTHERWISE LACKED BASIC TENETS OF DUE PROCESS AND FAIRNESS.

---

[1] NJTA's counsel, not counsel for petitioners, pointed out that in December 2017, petitioners filed their Notice of Appeal and petitioners' counsel filed a proposed class action lawsuit in the United States District Court for the District of New Jersey. That lawsuit challenges the reasonableness of the administrative fee and asserts claims for violating the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, violating the Fair Debt Collection Practices Act, unjust enrichment/disgorgement, and rescission of E-ZPass contracts. The federal court stayed that matter pending the outcome of this appeal.

1.  NJTA's Lack Of Candor To The Public During The Rulemaking Process.

2.  The Truth – Profoundly Different Than What NJTA Disclosed To The Public.

3. NJTA's Lack of Candor During The Rulemaking Process Violated: (i) The APA, (ii) Basic Tenets of Due Process And (iii) Fundamental Principles Of Fairness.

POINT [II]

ALTERNATIVELY, THE $50 ADMINISTRATIVE FEE SHOULD BE SET ASIDE BECAUSE (i) IT VIOLATED THE AUTHORIZING STATUTE WHEN IMPLEMENTED IN 2011, (ii) IT WAS OTHERWISE AN ABUSE OF NJTA'S RULEMAKING POWER, AND (iii) NJTA HAS CONSISTENTLY APPLIED THE REGULATION IN A WAY THAT CLEARLY VIOLATES THE AUTHORIZING STATUTE.

1. The 2003 Version Of The Authorizing Statute Set Two Guiderails On NJTA's Discretionary Setting Of The Fee – Reasonableness and Actual Cost.

2.  A $50 Fee Is Not "Reasonable" Because It Is Grossly Disproportionate To Identical Fees Charged By Other Tolling Authorities.

3. As Admitted By NJTA, When The Regulation Was Enacted, Expected Revenues From The $50 Fee Far Exceeded NJTA's Actual Cost of Collecting and Processing Violations.

4

4. NJTA's Enforcement Scheme For Collecting Fees Has Consistently Violated The Authorizing Statute.

POINT [III]

THE $50 ADMINISTRATIVE FEE SHOULD BE SET ASIDE BECAUSE NJTA HAS FAILED TO ADAPT IT TO CHANGING CONDITIONS AT ANY TIME SINCE 2011, IN VIOLATION OF THE AUTHORIZING STATUTE.

POINT [IV]

THE $50 ADMINISTRATIVE FEE SHOULD BE SET ASIDE BECAUSE NJTA'S 2017 NOTICE OF ACTION VIOLATED THE REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURES ACT, AND OTHERWISE LACKED BASIC TENETS OF DUE PROCESS, AND WAS OTHERWISE DEFECTIVE.

1. The 2017 Final Action Constituted A Rule Under The APA, Particularly Because No Other Rulemaking Had Previously Been Validly Accomplished.

2. The 2017 Final Action Was Improperly Issued Without Compliance With The APA, And Was Otherwise Invalid.

3. Even If Not A Rule, The Figures And Explanations Offered In The 2017 Final Action Violate The Authorizing Statute And Otherwise Are An Abuse Of Discretion.

POINT [V]

THE $50 ADMINISTRATIVE FEE SHOULD BE SET ASIDE BECAUSE IT IS BASED ON A NON-UNIFORM AND IRRATIONAL APPLICATION OF THE AUTHORIZING STATUTE.

POINT [VI]

THIS COURT SHOULD INVALIDATE THE REGULATION AND ORDER A DISGORGEMENT, OR AT A MINIMUM THIS COURT SHOULD REMAND FOR FURTHER PROCEEDINGS CONSISTENT WITH THE APA'S REQUIREMENTS.

II.

The doctrine of laches bars petitioners from attacking NJTA's 2011 rulemaking under the APA. More than six years elapsed between the promulgation of the regulation and the filing of the petition in 2017. The conditions that existed during that timeframe have changed significantly, and it would be inequitable to allow a 2011 APA challenge after this substantial passage of time.

"Laches is an equitable defense that may be interposed in the absence of the statute of limitations, and has been defined as an inexcusable delay in asserting a right." Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 140 (2001) (citations and quotation marks omitted). It "involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained

6

and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party." Ibid. "Factors considered in determining whether to apply laches include '[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay.'" Id. at 141 (alteration in original) (quoting Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 152 (1982)). "The primary factor to consider when deciding whether to apply laches is whether there has been a general change in condition during the passage of time that has made it inequitable to allow the claim to proceed." Ibid.

Between 2011 and 2017, a number of important rulemaking considerations have substantially changed. The contract supporting the E-ZPass system, pricing under that contract, and the responsibilities and costs for which NJTA bears direct accountability have changed. Moreover, evaluation of the 2011 rulemaking is extremely difficult since the pricing parameters for collection of E-ZPass toll violations are different, expenses from external to internal NJTA budget items have shifted, and because of the general evolution associated with toll collection costs for NJTA roadways. Therefore, laches bars a challenge to the 2011 rulemaking, particularly when – in our view – the primary focus of petitioners' appeal from the denial of their 2017 petition is on

NJTA's refusal to make a new rule and its determination that the $50 administrative fee should remain unchanged.

Notwithstanding the application of this equitable doctrine, on the merits, we conclude petitioners' arguments – that in 2011, NJTA violated the APA, due process, and fundamental fairness – are without sufficient merit to warrant further attention in this opinion. R. 2:11-3(e)(1)(E). We add these brief remarks.

NJTA complied with N.J.A.C. 19:9-6.5 (governing NJTA's rulemaking requirements) and N.J.S.A. 52:14B-4 (imposing additional requirements under the APA). The NJTA published the proper notice in the New Jersey Register of the rulemaking in 2011, which contained a sufficient explanation of the basis for the regulation. NJTA afforded all interested persons the proper period for public comment. The NJTA received no comments about the proposed fee increase or requests for a hearing. Four months after publishing the notice, NJTA published the adoption of the fee increase from $25 to $50 in the New Jersey Register.

## III.

As to the 2017 final action by NJTA, we see no APA violations. Petitioners certainly have the right to petition NJTA to adopt a new rule, or

amend an existing rule. N.J.A.C. 19:9-6.2 and N.J.S.A. 52:14B-4(f) permit that right and provide procedural safeguards applicable to such petitions. Here, NJTA met those requirements. Moreover, NJTA satisfied N.J.A.C. 19:9-6.3(c) by timely deliberating and issuing its written decision.

NJTA denied the petition and gave a written statement of reasons, which it had the right to do. According to that decision, NJTA concluded the $50 fee "continues to be reasonably related to the actual cost of processing and collecting toll violations." 49 N.J.R. 3623(b) (Nov. 20, 2017). In fact, NJTA explained that the costs associated with its toll collection system "well exceed $50[] per violation." Ibid. In support of those assertions, and others in its written decision, NJTA prepared a "2017 Toll Collection Budget Chart," which it contends estimates that the 2017 costs per violation is $80, not $50. Ibid. Petitioners, however, disputed the NJTA's calculations and analysis.

We are constrained to conclude this record is insufficient to support the calculation of the $50 fee as matching "the actual cost of processing and collecting the violation" mandated by N.J.S.A.27:23-34.3(a). Accordingly, a remand is required. Just because the administrative fee significantly exceeds the toll, does not mean that it is automatically unreasonable. Presumably, the need for a sophisticated system to capture toll violators exceeds the

9

comparatively modest cost of any given toll. Prudently, the Legislature decided taxpayers should not bear this burden and shifted the expense to those who commit toll violations and fail to address their lapse. If the cost of collection is $50, the sum does not shock the court's sense of fairness. Nevertheless, although NJTA abided by the proper procedures necessary to increase the administrative fee, we conclude the record remains unclear as to the reasonableness of the fee itself.

We owe no deference to a regulation that runs contrary to its authorizing statute. In re Regulation of Operator Serv. Providers, 343 N.J. Super. 282, 327 (App. Div. 2001). The fee imposed must properly be based on the average cost of processing and collection of unpaid tolls and may not be an arbitrary estimation. The basis for the fee must substantiate the need to mitigate the cost of collection, and not to assess a disguised fine. Compare Fee, Black's Law Dictionary (9th ed. 2009) (defining fee as "a charge for labor or services"), with Fine, Black's Law Dictionary (9th ed. 2009) (defining fine as "a pecuniary criminal punishment or civil penalty").

We recognize that "[a] regulation adopted by a state agency is presumed to be reasonable and valid." In re Repeal of N.J.A.C. 6:28, 204 N.J. Super. 158, 160 (App. Div. 1985). "If procedurally regular, it may be set aside only if it is

proved to be arbitrary or capricious or if it plainly transgresses the statute it purports to effectuate, or if it alters the terms of the statute or frustrates the policy embodied in it." Id. at 160-61 (citations omitted). Here, the regulation needed to meet two requirements; it had to be (1) "reasonable" and (2) "based upon the actual cost of processing and collecting the violation." N.J.S.A. 27:23-34.3(a).

To be sure, we accord an initial presumption of constitutionality to the authorizing statute and the regulation. N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8, appeal dismissed sub nom, Borough of E. Rutherford v. N.J. Sports & Exposition Auth., 409 U.S. 943 (1972). Even so, the existing record furnished to us on this appeal is patently insufficient for a reviewing court to make a definitive evidentially grounded assessment of these difficult and important issues surrounding whether continuing the $50 fee permitted by the regulation contravenes the authorizing statute.

For these many reasons, a full evidentiary hearing is vital to explore the foundation for NJTA's assertion that the $50 fee is a "reasonable administrative fee considering all of the actual costs associated with the system of collecting tolls from violators." 49 N.J.R. 3623(b). That is, whether the $50 fee is "based upon the actual cost of processing and collecting the violation," under the

authorizing statute. Such a hearing ideally should encompass expert testimony, cross-examination, and neutral judicial inquiry. At such a hearing, there should be ample findings of fact, including findings of credibility, and conclusions of law. That amplified record will enable a reviewing court to set forth a more informed ultimate resolution of the competing interests at stake.

The question then becomes what forum is best suited to develop such an evidentiary record. NJTA does not appear readily equipped to conduct such full-blown evidentiary hearings. Nor is the Office of Administrative Law the best suited venue, where discovery rights are limited, see N.J.A.C. 1:1-10.1 to -10.6, and the rules of evidence are relaxed, see N.J.S.A. 52:14B-10(a). We instead conclude that the exceptional circumstances of this wide-spreading litigation warrant referral of the necessary evidentiary hearing and fact-finding to a trial court, pursuant to the supplementation procedures set forth in Rule 2:5-5(b).

To the extent that we have not dealt with the remaining issues raised by petitioners, we conclude that they are without sufficient merit to warrant further attention in this opinion. R. 2:11-3(e)(1)(E). We add, however, these brief comments.

Under the facts as we know them, there is no basis to include, as part of the petition for rulemaking, a claim for damages, refunds, disgorgement, or unjust enrichment. N.J.A.C. 19:9-6.1 to -6.7 governs petitions by members of the public seeking rulemaking, and does not provide for such ancillary causes of action. Petitioners seek damages on behalf of all motorists similarly situated to them, but no court has certified such individuals as a class.[2] And NJTA's counsel points out that in the federal lawsuit, petitioners' counsel did not identify petitioners as putative class representatives. Nevertheless, any dispositive ruling on petitioners' claim for damages is premature. Although we have serious doubts about the propriety of such damages under these facts (because in part, petitioners apparently paid the toll violations, failed to make a timely protest, and then delayed filing the petition for almost two years), the record is incomplete and must be more fully developed before a ruling is made. On remand, therefore, the parties may address all issues related to petitioners' claim for damages.

---

[2] Although we are not squarely addressing the issue, we question whether class certification is appropriate given that the facts surrounding each motorist appear to be different (including places of residence, whether fees were paid, the total assessed, the roadway used, etc.).

In accordance with <u>Rule</u> 2:5-5(b), we therefore remand for supplementation of the administrative record.  We direct the Middlesex County assignment judge to designate a particular judge in Middlesex County to handle the remand proceedings.

Affirmed in part; and remanded in part for further proceedings consistent with this opinion.  We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1557-17T4