**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3415-21

IN THE MATTER OF THE
ESTATE OF MARIE SEMPLE
a/k/a MARIE K. SEMPLE, deceased.

_____

Submitted October 18, 2023 – Decided July 31, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. Q-1569.

Oliver V. Short, appellant pro se.

Chiesa Shahinian & Giantomasi, PC, attorneys for respondent Tremain Stanley have not filed a brief.

PER CURIAM

In this probate case, plaintiff Oliver V. Short appeals from orders denying his motion to enforce certain aspects of a 2015 consent order and his subsequent reconsideration motion. Perceiving no abuse of discretion in the court's application of the doctrine of laches in denying plaintiff's motion to enforce, we affirm.

On July 18, 2000, Marie Semple executed a document entitled "Marie Semple Qualified Personal Residence Trust" (QPRT), creating an irrevocable trust and transferring into the trust certain residential property she owned. The QPRT directed the trustee, on Marie's death, to distribute the principal of the trust's estate to Marie's children: Harry Semple, Kathryn Susan Semple Romano, Roger Semple, and plaintiff.[1] Marie died in 2012.

In a verified complaint, plaintiff and Harry sued Roger and Kathryn, individually and in Kathryn's capacities as Executor of Semple's estate and trustee of the Marie Semple Family Dynasty Trust Agreement of 2000 and purported trustee of the QPRT. They alleged Kathryn had engaged in a series of improper actions, including refusing to sell the residential property in the trust's estate in accordance with the QPRT.

In a March 11, 2015 consent order, the parties affirmed they wanted to sell the property and gave Kathryn the authority to execute documents required to complete the sale and plaintiff and Harry agreed to withdraw any objection

---

[1] Because some of the individuals involved in this case share the name Semple, we use their first names to reference them for clarity. We intend no disrespect by doing so. We refer to Oliver V. Short as "plaintiff"; he is the only plaintiff who filed this appeal.

A-3415-21

they had to the finalization of the sale of the property. The consent order contained the following provisions:

> 4. Plaintiffs' counsel will receive, within twenty[-]four hours, or one business day of receipt by defendants' counsel, whichever is sooner, copies of all documents, including documents that defendant, Kathryn Susan Semple Romano executed in her fiduciary capacity with respect to the sale of the property.
>
> 5. To expedite completion of the sale, defendants' attorney, Budd Larner P.C. may act as closing attorney for the sale of the property. Plaintiffs hereby waive any conflict of interest for the sole purpose of said representation of the parties and to effectuate final sale of the property. Plaintiffs shall be provided with copies of all closing documents in accordance with paragraph 4 herein.
>
> 6. Counsel for both parties are hereby granted permission to communicate with the realtor, in writing and with copy to counsel for the other side.

The court and the parties' attorneys executed the consent order. Steven K. Warner, Esq., of Ventura, Miesowitz, Keogh & Warner, P.C. (Ventura), executed it on behalf of plaintiff and Harry; David R. Tawil, Esq., of Budd Larner, P.C., executed it on behalf of defendants.

The property sale closed on March 31, 2015. In a March 31, 2015 email to Warner, Tawil, Amanda Wolfe, Esq., of Ventura, Tremain Stanley, Esq., of

3

Budd Larner, and others, Frank A. Biancola of Budd Larner stated the closing had concluded and "[a]ttached is a copy of the fully executed closing statement."

In a May 5, 2015 email, Wolfe advised Warner that plaintiff had "requested the documents we received regarding the sale of the property. Here are the documents that I have received and a few emails that seemed particularly relevant." Later that day, she sent an email to plaintiff, Harry, and Warner, stating "[a]ttached please find the documents I've received regarding the sale and an email from Mr. Biancola regarding the title company dictating who would be obligated to sign." She asked plaintiff to "[p]lease let us know if you have any difficulty opening any of the files." The email attachments are not in the record. They are described in the email as "signed hud1," "carbon monoxide," "signed rider," "signed contract," "Short Semple Bakka Bircsak Contract title requirements," and "Certification."

In a May 20, 2015 email, Wolfe asked Biancola for "copies of the final, witnessed, contract documents executed by Ms. Romano." She acknowledged her firm might have had some of those documents but stated "we would like a final set that includes all relevant documents." On the same day, Wolfe forwarded to plaintiff and Harry a copy of that email and stated she would forward his responses and that she had attached a copy of the deed.

In a September 11, 2015 email to Biancola, plaintiff asserted the documents he had received were "draft, undated, unsigned versions of electronic documents." He requested from Biancola "[a] single bound photo static copy of original fully executed documents inclusive of all closing document [sic] with appropriate tabs for each document" and "[a] cover letter that certifies that these document [sic] are final, fully executed, and all inclusive (riders, disclosures, deed, reports, or any other reference or inferred documents, etc.)." In a September 14, 2015 response, Biancola told plaintiff he had been "involved only with the closing of the sale of the subject premises" and he knew "nothing" about the "on-going" litigation. He advised him he would reach out to Stanley and Tawil and that someone would get back to him.

This case was dismissed in June 2016.

In a February 5, 2019 email, plaintiff asked Biancola to "provide the Affidavit of Legal Title" and "a copy of a deed that conveys legal title to your client or confirm none exists." He sent a follow-up email on March 30, 2019, requesting "a physical, bound, copy of the closing documents." In an April 4, 2019 email, Biancola denied some of the statements plaintiff had made in his emails, stated he and his firm had not been authorized by their former client to provide any documentation to him, and suggested plaintiff obtain the

5

documentation from his lawyer, Warner, who had received the documentation and had approved it and the handling of the closing.

On March 16, 2022, plaintiff emailed Lisa Brophy of the Union County Surrogate's Office and Biancola, stating his intention to file a motion regarding the copies of the closing documents. In an email sent the next day, plaintiff advised Brophy he had learned Biancola was deceased and Budd Larner was no longer in business. Brophy responded, telling plaintiff she thought the closing documents had been provided to his counsel Warner, suggesting he contact Warner and providing Warner's email address.

Between March 20, 2022, and March 25, 2022, plaintiff exchanged emails with former Budd Larner attorneys, asking for "copies of the client file." Those lawyers told plaintiff Budd Larner had ceased operations in 2019, the file was not in their possession or Budd Larner's storage facility, and he should contact the attorney who had represented him.

On March 24, 2022, plaintiff moved "to enforce litigants' rights and declaratory judgment." He sought an order enforcing paragraphs 4, 5, and 6 of the March 11, 2015 consent order. Plaintiff addressed his notice of motion to attorney Stanley, whom he identified as "defendant."

A-3415-21

On April 28, 2022, the court entered an order with an attached legal analysis, denying plaintiff's motion. The court found the case had been dismissed in June 2016, Budd Larner no longer existed, Stanley worked for a different law firm and had represented she did not have the closing documents, and plaintiff's lawyer or plaintiff pro se could have sought "a post judgment motion for violation of litigant's rights" in 2015 after the alleged violation of the consent order.[2] Citing the equitable maxim "Equity aids the vigilant, not those who sleep on their rights," the court held plaintiff's motion was barred by the doctrine of laches. In a June 10, 2022 order, the court denied plaintiff's subsequent reconsideration motion. This appeal followed.

"Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Fox v. Millman, 210 N.J. 401, 418 (2012). Thus, we review the application of the doctrine of laches for an abuse of discretion. United States v. Scurry, 193 N.J.

---

[2] Plaintiff faults the trial court for not considering other pleadings and motions, asserting they "are no different tha[n] the motion filed in 2022 . . . they were only labeled differently." But plaintiff did not demonstrate he had submitted those other pleadings and motions to the trial court with his 2022 motion, thereby making them part of the motion record, and did not include complete copies of them in the appellate record. See Harris v. Middlesex Cnty. Coll., 353 N.J. Super. 31, 48 (App. Div. 2002) (citing Rule 2:5-4(a), court holds "[a]ppellate [c]ourt will not consider evidentiary material which was not part of a record below").

492, 504 (2008).  We also review a trial court's order on a reconsideration motion under an abuse-of-discretion standard.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)) (internal quotation marks omitted).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  Therefore, "[w]hether the facts found by the trial court are sufficient to satisfy the applicable legal standard is a question of law subject to plenary review on appeal."  State v. Cleveland, 371 N.J. Super. 286, 295 (App. Div. 2004).

"The doctrine of laches applies when there is neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done."  Zilberberg v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 468 N.J. Super. 504, 513 (App. Div. 2021).  "[L]aches is the failure to assert a right within a reasonable time resulting in prejudice to the

opposing side . . . . The key factors are the length of delay, reasons for delay, and change of position by either party during the delay." Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 570 (App. Div. 2003). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr v. Smeal, 178 N.J. 169, 181 (2003). The time requirements for laches to apply "are not fixed but are characteristically flexible." Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 151 (1982).

The trial court did not abuse its discretion in denying plaintiff's motion based on its application of the doctrine of laches. The consent order plaintiff now seeks to enforce required the production of documents "within twenty[-]four hours, or one business day of receipt by defendants' counsel, whichever is sooner." The closing occurred on Tuesday, March 31, 2015. If plaintiff did not receive the documents "within twenty[-]four hours, or one business day of receipt by defendants' counsel," he could have moved for relief by the end of that week or the next week or by the end of the month or year. He could have moved for relief in May 2015 after attorney Wolfe's efforts to obtain the documents were, as alleged, unsuccessful or in September 2015 after

plaintiff's efforts were unsuccessful.  He could have moved before the case was dismissed in June 2016.

By the time plaintiff filed this motion, the case had been dismissed for nearly six years, the closing attorney had died, his firm had been dissolved for nearly three years, and none of the other attorneys contacted had a copy of the file.  The prejudice is palpable, and plaintiff's delay is unexplained.

Perceiving no abuse of discretion in the court's application of the doctrine of laches, we affirm the April 28, 2022 order denying plaintiff's motion to enforce litigant's rights and the June 10, 2022 order denying plaintiff's reconsideration motion.

To the extent we have not otherwise commented on them, we have duly considered plaintiff's other arguments and conclude they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3415-21