**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5072-17T2

I.K.M., INC.,

    Plaintiff-Appellant,

v.

LAW OFFICE OF
JOHN D. KOSYLO,

    Defendant-Respondent.

_____

Submitted September 25, 2019 – Decided October 18, 2019

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1724-14.

Peter A. Ouda, attorney for appellant.

Gregory Charles Dibsie, attorney for respondent.

PER CURIAM

Plaintiff I.K.M., Inc. appeals from a May 25, 2018 Law Division order, denying its motion to vacate an order dismissing its legal malpractice complaint against its former attorney, defendant John D. Kosylo. We affirm.

We glean these facts from the record. In September 2012, Kosylo filed a breach of contract complaint on plaintiff's behalf against plaintiff's landlord, 825 Realty, LLC, and plaintiff's sub-lessee, OzSa, LLC, in relation to an October 8, 2008 sub-lease of lease agreement entered into by all three parties. On September 12, 2013, the complaint was dismissed on an unopposed summary judgment motion.

Although plaintiff's corporate charter had been revoked since November 16, 2012, and plaintiff therefore lacked standing to pursue the claim, the specific reason for granting the summary judgment motion is unclear in the record. The moving papers submitted in support of the motion relied on plaintiff's revoked corporate charter as well as plaintiff's execution of a December 2009 assignment of lease and assumption agreement. The assignment and assumption agreement terminated the lease between plaintiff and its landlord in favor of its sub-lessee, which agreed to assume all of plaintiff's obligations for the remaining lease term. Although the parties refer to both grounds, the record does not include the court's reasoning in granting the summary judgment motion.

In June 2014, Kosylo attempted to have the breach of contract complaint reinstated by moving for reconsideration on the ground that neither he nor plaintiff had been served with the summary judgment motion. However, the motion for reconsideration was denied.[1] Thereafter, on December 1, 2014, plaintiff filed a malpractice complaint against Kosylo, alleging he "deviat[ed] from accepted standards of practice" by failing "to communicate to his client the status of the [underlying] matter[,]" and failing to oppose the summary judgment motion, resulting in the "irretrievabl[e]" loss of plaintiff's claims. Kosylo filed a contesting answer with affirmative defenses, and later moved for summary judgment on the eve of trial.

In his statement of material facts, see R. 4:46-2(a), which was unsupported by any certification, Kosylo asserted that he had filed the breach of contract complaint on plaintiff's behalf unaware that in December 2009, an assignment of lease and assumption agreement had been executed by Dennis and Kathy Ravas, plaintiff's principals. The effect of the December 2009 agreement was to effectively sign over any and all rights plaintiff possessed under the lease and sub-lease agreement to OzSa, LLC. According to Kosylo, in a subsequent

---

[1] Neither the moving papers nor the order denying the motion for reconsideration was included in the record.

meeting with the Ravases and Peter Sideris, Kathy Ravas's brother, the Ravases acknowledged executing the agreement on plaintiff's behalf.[2] Thereafter, upon contacting the Ethics Board for advice, Kosylo moved for reconsideration based on improper service as it would have been an "ethical violation" for him to deny that plaintiff executed the agreement. Additionally, Kosylo indicated plaintiff's corporate charter remained suspended.

In opposition, plaintiff asserted that had the summary judgment motion been opposed, it would have been denied because the agreement relied upon to grant the motion was a forgery. In support, plaintiff submitted a certification prepared by Kathy Ravas, averring that the purported agreement was never signed by her or her husband, and neither ever admitted signing the agreement to Kosylo. According to Kathy,[3] Kosylo never advised them about the summary judgment or reconsideration motions so that they could "have advised [the] court of the fraud that had taken place[,]" and Kosylo never told them "he could[ not] ethically handle the case" so that they could "have gone to another attorney."

---

[2] Kosylo submitted a certification dated January 16, 2017, prepared by Sideris in which he admitted being present in a meeting with the Ravases and Kosylo during which the Ravases "both acknowledged that the signatures were genuine and that they had signed the document."

[3] Hereafter, we refer to the Ravases by their first names to avoid any confusion created by their common surname and intend no disrespect by this informality.

Kathy also certified that an application for reinstatement of plaintiff's corporate charter was pending as of December 1, 2016. Additionally, plaintiff's attorney submitted a supporting certification, asserting that "no expert testimony" was "required in th[e] case" because the allegations were "so basic" and plaintiff intended to prove its allegations based on common knowledge. Counsel averred, however, that "[p]laintiff should be allowed to use [an expert] if they decide to" at trial because he was never served with "a demand for an expert[.]"

Following oral argument, on January 20, 2017, three days before the scheduled trial date, the motion judge granted the summary judgment motion and dismissed plaintiff's complaint without prejudice. In an oral decision, the judge explained "[t]here[] [was] no dispute" plaintiff was still "not a recognized corporation . . . in the State of New Jersey[,]" and therefore lacked standing to pursue the claim. According to the judge, although an application was pending, as a corporation, "in order to sue and be sued in the State . . . , you have to be properly recognized, active and otherwise compliant with the laws of the State." The judge noted, however, that in the event the corporate charter and the complaint were reinstated, then "an expert would be required if th[e] matter were tried" based on Kosylo relying on "his communications with the ethics committee" as his defense.

A-5072-17T2

Over fourteen months later, on April 6, 2018, plaintiff moved to vacate the dismissal of the complaint, and restore the matter to the active trial list, with ninety days to complete discovery. In support, Dennis certified that the corporate charter was reinstated, effective June 30, 2017, and a business registration certificate was issued on November 6, 2017. Kosylo opposed the application and cross-moved to dismiss the complaint with prejudice. In support, Kosylo essentially certified to the representations contained in the statement of undisputed material facts previously submitted in support of his original motion for summary judgment.

Following oral argument, on May 25, 2018, the judge denied plaintiff's motion, and granted Kosylo's cross-motion, thereby dismissing plaintiff's complaint with prejudice. In an oral opinion, memorialized in written statements of reasons accompanying the orders, the judge explained that "the essence of the . . . motion to vacate the prior order dismissing [the complaint without prejudice was] governed by [Rule] 4:50-1 which [was] not addressed or briefed in [p]laintiff's moving papers." In addition, according to the judge, "[t]he doctrine of laches" also applied. Applying these principles, the judge concluded that plaintiff's delay in reinstating its corporate charter "well after the litigation began" was inexcusable.

A-5072-17T2

The judge stated:

> There is no explanation as to why the ministerial procedure involved in reinstating the [p]laintiff's corporate charter was not done more timely or why . . . [p]laintiff waited for [fourteen] months to seek to set aside the dismissal. The process involves the completion of a one[-]page form which is filed with the Secretary of State. However, the reinstatement was not completed until June 30, 2017. Nonetheless[,] . . . [p]laintiff apparently did nothing to revive the complaint until filing the present motion . . . . In the very limited certifications filed with the court, nothing is stated to explain this serious delay.

The judge concluded "there was no diligence[,]" or "sense of urgency[,]" and to restore plaintiff's complaint "without any basis in law" would be "unfair and unjust."

The judge continued:

> Additionally, although . . . [p]laintiff supplied an Affidavit of Merit, an expert report has not been supplied. An expert report is needed in a malpractice action. If the [j]udgment is vacated and . . . [p]laintiff's case is reopened, . . . [p]laintiff will not be able to prove exceptional circumstances that will warrant a reopening of discovery. Trial has been scheduled twice in this case, thus . . . [p]laintiff had ample time to conduct discovery and was afforded a careful preparation process.

See R. 4:24-1(c) (allowing "[n]o extension of the discovery period . . . after a[] . . . trial date is fixed, unless exceptional circumstances are shown.").

According to the judge, "the most telling conduct" was plaintiff's "pattern" of ignoring "[c]ourt [o]rders" and deadlines. The judge determined that plaintiff's conduct "caus[ed] a waste of judicial resources," and was "harmful" to defendant. In that regard, the judge noted:

> Defendant hasn't articulated and hasn't complained with a specific basis of prejudice.
>
> However, . . . more than a year, has been . . . wasted by . . . [p]laintiff in reinstating the action.
>
> And that time has caused memories to continue to become stale, witnesses' availab[ility] is questioned and there is, no doubt, a diminution in the ability of . . . [d]efendant, to . . . obtain the attention that they need in the case because those factors have interrupted the fresh flow of evidence.

On appeal, plaintiff argues the judge erred in denying its motion to reinstate the complaint and extend discovery because there was "no time limit" set for moving to restore once the corporate charter was reinstated. Plaintiff argues further that the judge erred in dismissing its complaint with prejudice because it was relying on the common knowledge doctrine, which did not require expert testimony. We agree with the judge that plaintiff's delay was inexcusable. Because we affirm on that basis, we need not address plaintiff's remaining arguments.

8

Under Rule 4:50-1(a), "upon such terms as are just, the court may relieve a party . . . from a[n] . . . order" for "excusable neglect[.]"  "Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 335 (1993).  A motion to vacate an order under Rule 4:50-1(a) "shall be made . . . not more than one year after the . . . order . . . was entered . . . ." R. 4:50-2.  "The [r]ule is 'designed to reconcile the strong interests in finality . . . and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" N.J. Auto, 132 N.J. at 334 (quoting Baumann v. Marinaro, 96 N.J. 380, 392 (1984)).  However, "[c]ourts should use Rule 4:50-1 sparingly," limited to "exceptional situations . . . in which, were it not applied, a grave injustice would occur." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994).

A "trial court's determination under the rule warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).  An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123-24

(2007) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). Further, "[t]he party seeking relief bears the burden of proving that events have occurred subsequent to the entry of [an order] that, absent the relief requested, will result in 'extreme' and 'unexpected' hardship." Hous. Auth. of Morristown, 135 N.J. at 285-86 (quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)).

Here, plaintiff failed to meet its burden. As the judge pointed out, plaintiff's motion was untimely because it was filed more than one year after the order was entered, and plaintiff failed to even articulate excusable neglect or demonstrate due diligence or reasonable prudence to warrant relief from the order. Thus, we discern no abuse of discretion, clear or otherwise, to warrant intervention.

Likewise, we agree with the judge that plaintiff's motion to vacate the dismissal was barred by the doctrine of laches. "That doctrine is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003) (citing In re Kietur, 332 N.J. Super. 18, 28 (App. Div. 2000)). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the

proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Id. at 181 (citing Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 172 (Law Div. 1994), aff'd, 287 N.J. Super. 114 (App. Div. 1996)).

While "[t]he time constraints for the application of laches 'are not fixed but are characteristically flexible[,]'" ibid. (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 151 (1982)), "[t]he key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90 N.J. at 152). "The core equitable concern in applying laches is whether a party has been harmed by the delay." Ibid. (citing Lavin, 90 N.J. at 152-53). "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

Given these principles, we again agree with the judge that plaintiff's unreasonable delay, for which it offered no plausible justification, was inexcusable and Kosylo was harmed by the delay. Thus, by application of the doctrine of laches, plaintiff forfeited his right to pursue the complaint, and we

11

discern no abuse of discretion in the judge's decision to dismiss the complaint with prejudice.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION