**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0177-20

ROCCO J. CANONICA,

    Plaintiff-Appellant,

v.

MARIE CANONICA,
n/k/a MARIE KOCHEL,

    Defendant-Respondent.

_____

Submitted February 14, 2022 – Decided February 25, 2022

Before Judges Sabatino and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-5478-93.

Daniel K. Newman, attorney for appellant.

Puff & Cockerill LLC, attorneys for respondent (Christine C. Cockerill, on the brief).

PER CURIAM

The central issue in this appeal is whether the doctrine of laches precludes an ex-wife from enforcing a provision in the parties' 1993 divorce judgment, which entitled her to a coverture portion of her ex-husband's pension. The Family Part rejected the ex-husband's laches argument, concluding that, despite the passage of time, it would be inequitable to deprive the ex-wife of the pension share she had bargained for in the divorce agreement. The court ordered enforcement of the pension provision, and awarded the ex-wife's counsel fees.

The ex-husband appeals, contending he has no obligation to share any of the pension with his ex-wife. He argues the wife's insufficient action to correct the pension documentation until after he retired exempts the asset from equitable distribution. He further argues the judge exhibited a lack of understanding of the post-judgment pension process, should have held an evidentiary hearing to delve more into the ex-wife's reasons for delay, should have barred her motion under the doctrine of unclean hands, and should have denied her counsel fees.

Having considered the ex-husband's arguments, we affirm the family part's determination, substantially for the sound reasons set forth in the July 31, 2020 written decision of Judge Benjamin D. Morgan.

Briefly stated, the following background informs our review. After a ten-year marriage, the parties were divorced in 1993. With the assistance of their

A-0177-20

then-counsel,[1] they stipulated to the entry of a final judgment of divorce ("FJOD"). Among other things, the FJOD provided that the ex-wife was entitled to equitable distribution of a portion of the pension of the ex-husband, a public schoolteacher. The ex-wife would receive her share upon the ex-husband's retirement through the means of a Qualified Domestic Relations Order ("QDRO"), also described in the briefs as a "DRO."

The FJOD specified a coverture formula to calculate the ex-wife's pension share, payable in the form of a monthly annuity. Notably, in paragraph 8(e), the FJOD prescribed that both "parties shall use their best efforts, taking such steps as shall be reasonable and appropriate, to cause the [Pension] Plan Administrator to comply with those [pension] provisions[.]" In paragraph 7 of the FJOD, the court expressly retained jurisdiction to amend the FJOD to maintain the qualifications of the QDRO or to "maintain [the wife's] assigned interest in the Plan."

After the divorce judgment was entered, the ex-wife or her then-counsel sent a drafted QDRO to the New Jersey Division of Pensions and Benefits. The ex-wife received from the Division a letter dated December 4, 1995, advising her the proposed order was not in proper form because the ex-husband's public

---

[1] Both parties are now represented by different counsel.

3

employee retirement plan is not an ERISA plan. According to her certification, the ex-wife then retained a different lawyer to resolve the problem, and she recalls that lawyer corresponded with the ex-husband's divorce attorney about the situation. As she attested, the ex-wife heard back nothing further and assumed the Division's requirements concerning the paperwork had been satisfied. Meanwhile, the ex-husband continued to be employed as a schoolteacher after the divorce, and the value of the pension grew. The divorced parties apparently did not communicate frequently with one another.

The ex-husband retired in or about July 2018. By that point, the ex-husband had designated his second wife as the beneficiary of his pension. He started collecting monthly payments, with no share being deducted for or paid to the ex-wife.

When the ex-wife learned what had occurred, she retained her present counsel and moved to enforce the FJOD pension provisions. The ex-husband opposed enforcement, arguing that the ex-wife had waited too long and is equitably barred from enforcing the provisions under the doctrines of laches and unclean hands. The ex-husband also cross-moved under the FJOD for reimbursement concerning alleged child support overpayments and monies due

from the ex-wife on the car distributed to her in the divorce.[2] Both sides requested counsel fees.

After considering the parties' submissions and hearing oral argument, Judge Morgan granted the ex-wife's motion and denied the ex-husband's cross-motion, explaining his analysis in his written decision. The judge also awarded the ex-wife counsel fees of $4,348.50, finding the ex-husband had acted in bad faith. This appeal by the ex-husband ensued.

It is well established that reviewing courts accord substantial deference on appeal to the decisions of Family Part judges. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Pascale v. Pascale, 113 N.J. 20, 33 (1988). Given the Family Part's special expertise, we must accord particular respect to the trial court's findings in such cases, and to the conclusions that logically flow from those findings. Cesare, 154 N.J. at 412-13. In addition, the specific principles of laches and unclean hands invoked by the ex-husband are doctrines of equity. On such matters of equity, the trial court customarily has broad authority to grant

---

[2] The court's rulings concerning the child support and the car payment have not been briefed on appeal. Accordingly, we will not reach those matters. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.") (Citing Fantis Foods v. River Ins. Co., 332 N.J. Super. 250, 266-67 (App. Div. 2000) and Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 2:6-2 (2015)).

A-0177-20

or withhold relief. See Kaye v. Rosefielde, 223 N.J. 218, 231 (2015) (emphasizing trial courts' "broad discretionary power to adapt equitable remedies to the particular circumstances of a given case.") (Internal citations omitted).

As we have noted, the ex-husband's main argument is that the ex-wife's claim to enforce her pension rights should have been barred by the doctrine of laches. Laches arises from "the neglect, for an unreasonable and unexplained length of time . . . to do what in law should have been done." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 151 (1982) (quoting Atl. City v. Civil Serv. Comm'n, 3 N.J. Super. 57, 60 (App. Div. 1949)). The doctrine bars relief when the delaying party had ample opportunity to bring a claim, and the party invoking the doctrine was acting in good faith in believing that the delaying party had given up on its claim. Knorr v. Smeal, 178 N.J. 169, 181 (2003); Lavin, 90 N.J. at 152.

Laches can only apply where a party unreasonably delays in asserting its rights, and the opposing party relies in good faith in believing that the right has been abandoned. See Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 171-72 (Law Div. 1994), aff'd, 287 N.J. Super. 114 (App. Div. 1996). "The core equitable concern in applying laches is whether [the opposing]

party has been [unfairly] harmed by the delay." <u>Knorr</u>, 178 N.J. at 181 (citing <u>Lavin</u>, 90 N.J. at 152-53).

Here, the Family Part judge identified ample reasons for rejecting the ex-husband's argument that the ex-wife forfeited her right under the FJOD to her coverture share of his pension. The passage of time is not enough, in and of itself, to conclude the ex-wife abandoned her interest in the pension. It is unrefuted that the ex-wife or her then-attorney presented a draft QDRO to the Division after the divorce judgment. When the Division found that paperwork was not in proper form, the ex-wife retained an attorney to correct the problem. There was no urgency in completing the task at that time, as the ex-husband was still working.

Moreover, as Judge Morgan rightly noted, the FJOD imposed on both parties, not just the ex-wife, the mutual obligation to implement the QDRO. The ex-husband asserted in his certification that at the time of the divorce he gave his own attorney documents needed for the QDRO, but that did not relieve him of his shared responsibility under the FJOD to assure the ex-wife received her agreed-upon share of the pension.

The cases cited in the ex-husband's brief in support of his laches argument are not factually comparable to this case. In <u>Onken v. Onken</u>, 123 N.J. Eq. 156

A-0177-20

(E. & A. 1938), laches was applied where an ex-husband waited twelve years to move to set aside a provision in a divorce decree.  By contrast, here the ex-wife moved to enforce, not set aside, a long-standing provision in the final judgment. In Herman v. Herman, 17 N.J. Misc. 127 (Ch. 1939), a court-appointed master had merely made a recommendation to the court that the wife receive a sum of alimony, but no court order was entered to adopt that recommendation.  Here, the FJOD specified the ex-wife's rights, plainly and conclusively.  Her entitlement to a coverture share of the pension was not based on a mere recommendation.

In sum, Judge Morgan soundly concluded the ex-husband had no reasonable basis to presume the ex-wife had abandoned her rightful coverture-based share.  We affirm his laches ruling.

For similar reasons, the judge likewise did not err in rejecting the claim the ex-wife had unclean hands.  See Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 169 N.J. 135, 158 (2001) (noting "that '[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings'") (quoting A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246 (1949)).  The ex-wife did not deceive her former spouse about giving up her interest in the pension.

8

Although she could have moved sooner for enforcement when she learned he had retired, that delay was not inequitable. The judge duly considered the ex-husband's financial circumstances, and the fact that both he and his second wife had retired and that they had depended on him receiving his full pension. But the ex-husband had no right to presume that the FJOD's pension-allocating provisions were now a nullity.

We further reject the ex-husband's contention that a plenary hearing was required in the circumstances presented. A plenary hearing is not inexorably required in every post-judgment matrimonial dispute. See, e.g., R. 5:8-6 (requiring plenary hearings in custody matters only where the contested issues are "genuine and substantial"); Barblock v. Barblock, 383 N.J. Super. 114, 124 (App. Div. 2006) (no plenary hearing was required to authorize mother's relocation of her children out of state, over the father's objection, where no material factual disputes were demonstrated). In this instance, the ex-husband has come forward with no counter-evidence showing that the ex-wife's certification was untrue concerning the pension and her post-divorce steps to try to implement its proper allocation.

Lastly, we affirm the award of counsel fees. We will not disturb a counsel fee award in a matrimonial case under Rule 4:42-9(a)(1) and Rule 5:3-5(c)

except "only on the 'rarest occasion', and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). The court provided ample justification for the fee award in this case, which was in part based on the ex-husband's failed cross-motion regarding the child support and car payments.

All other arguments raised on appeal, to the extent we have not addressed them expressly, lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION