**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1570-23

NOHA SALEH,

    Plaintiff-Respondent,

v.

MOHAMED AHMED,

    Defendant-Appellant.

_____

        Submitted April 29, 2025 – Decided May 15, 2025

        Before Judges Firko and Augostini.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0312-19.

        Hark & Hark, attorneys for appellant (Michael J. Collis, on the briefs).

        Arndt, Sutak & Micelli, LLC, attorneys for respondent (Lauren A. Miceli and Victoria A. Wilton, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Mohamed Ahmed, plaintiff Noha Saleh's ex-husband, appeals from the Family Part's December 15, 2023 order denying his cross-motion seeking equitable distribution of certain assets and liabilities and for a consideration of alimony, which was not addressed in a January 6, 2020 order granting plaintiff a judgment of divorce (JOD). The judge denied nearly all of the relief sought in the cross-motion based on the doctrine of laches and Rules 4:50-1 and -2. We affirm.

I.

We derive the following facts and procedural history from the motion record. The parties divorced after twenty-five years of marriage. They have two emancipated children. On January 18, 2018, plaintiff filed a complaint for divorce against defendant. In late 2019, plaintiff claims that she could not leave Egypt because defendant secured an order from an Egyptian court to prevent her from leaving the country. The JOD granted plaintiff a divorce and provided, "all issues regarding equitable distribution and support are reserved pending further hearing." The order also required the JOD to be registered with the Egyptian Embassy and ordered defendant to provide plaintiff's counsel with copies of his American and Egyptian passports and his Egyptian identification by January 7, 2020, so plaintiff could pursue an Islamic divorce.

On January 15, 2020, the judge ordered defendant to direct his attorney in Egypt within twenty-four hours to appear before the Family Court in Alexandria, Egypt, to obtain a new order to vacate the travel ban against plaintiff, who is an American citizen, and to register the JOD in Egypt. Because defendant failed to comply with the order, plaintiff claims she was forced to remain in Egypt for an additional three months.

Thereafter, on September 23, 2021, defendant filed a motion seeking to terminate his pendente lite support obligations and to list the former marital home in Kendall Park for sale. Plaintiff filed a cross-motion seeking enforcement of the prior court order directing payment of one-half of the retroactive pay defendant received, and the previously ordered sum of $13,436.69.

Following an unsuccessful mediation and additional motion practice, on February 28, 2022, the judge issued an order addressing support and equitable distribution issues. Defendant was ordered to provide plaintiff with "information on all Egyptian, Saudi Arabia and Arab Emirate bank accounts and properties" he has an ownership interest in, and "all income derived from these countries" (international assets). By consent, defendant's child support obligation was terminated. The judge granted plaintiff's cross-motion

3

requesting one-half of defendant's retroactive pay in the sum of $13,436.69, which was unopposed, directing the sale of the parties' former marital home, directing defendant to provide copies of his passport, Egyptian identification card, and information on his international assets.

Because defendant did not comply with the terms of the February 28, 2022 order, plaintiff filed a motion to enforce litigant's rights under Rule 1:10-3.[1] On November 7, 2022, the judge granted plaintiff's motion and determined that defendant violated Rule 1:10-3 by failing to: (1) provide proof that he registered the JOD with the Egyptian court; (2) provide plaintiff's counsel with a copy of his passport and Egyptian identification card; (3) provide the information on his international assets; and (4) pay plaintiff the $13,436.69 sum.

Thereafter, on February 27, 2023, the parties entered into an amended JOD, which provided:

---

[1] Rule 1:10-3 states "[n]otwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action. . . . [i]f an order entered on such an application provides for commitment, it shall specify the terms of release provided, however, that no order for commitment shall be entered to enforce a judgment or order exclusively for the payment of money, except for orders and judgments based on a claim for equitable relief including orders and judgments of the Family Part . . . [i]n family actions, the court may also grant additional remedies as provided by R[ule] 5:3-7." Pressler & Verniero, Current N.J. Court Rules, Rule 1:10-3 (2025).

A.  The children born of the marriage . . . are found to be emancipated;

B.  Each party's responsib[ility] to satisfy child support is terminated, effective January 20, 2022;

C.  Defendant shall pay [p]laintiff . . . $13,436.69, representing [fifty percent] of the retroactive pay received by [d]efendant . . . subject to equitable distribution. Said sum has been and owing from [d]efendant to [p]laintiff since on or before November 17, 2022;

D.  Defendant shall pay [p]laintiff an additional $100 per week for each and every week that passes after November 17, 2022, that [d]efendant fails to pay [p]laintiff . . . $13,436.69 as directed above;

E.  Defendant shall pay [p]laintiff an additional sum of $12,000 resolving equitable distribution of the martial debts;

F.  Defendant shall show proof that he effectively registered the January 6, 2020 [JOD] with Egyptian case number 2019/389;

G.  Defendant shall provide [plaintiff's counsel] a copy of his passports and valid Egyptian identification;

H.  Per the [November 7, 2022 order,] [d]efendant shall pay [p]laintiff reimbursement of [attorney] fees in the sum of $1,626.25; and

I.  Per the [February 21, 2023 order,] defendant shall pay plaintiff reimbursement of attorney fees and filing fees in the amount of $1,025.

5

On March 15, 2023, defendant sent plaintiff three separate checks, in the amounts of $300, $300, and $325.[2] He did not make any further payments. On April 18, 2023, defendant sent plaintiff a check in the amount of $700, which was applied towards his attorney fee obligation under the February 21, 2023 order; and on October 11, 2023, he sent plaintiff a check in the amount of $1,626.25, satisfying his reimbursement of attorney fees under the November 7, 2022 order.

On November 7, 2023, plaintiff filed another motion to enforce litigant's rights. Plaintiff sought to: (1) hold defendant in contempt for violating various terms of the amended JOD; (2) give defendant a specific timeframe to satisfy the terms of the amended JOD; and (3) have a bench warrant issued for defendant's arrest if he failed to comply.

In response to plaintiff's motion to enforce litigant's rights, defendant filed a cross-motion, raising for the first time, financial assets and issues he claimed were subject to equitable distribution and not addressed in the amended JOD. In his certification in support of his cross-motion and in opposition to plaintiff's motion, defendant stated "[s]everal critical issues of asset distribution remain

_____

[2] Defendant's check in the amount of $325 was applied towards the $1,025 counsel and filing fees.

A-1570-23

unaddressed" including his "fair share" of: "rental income and real property value" of a luxury apartment owned by plaintiff in Egypt; office space owned by plaintiff in Egypt; income generated from Noha Tours, LLC; real property values, assets, business and appraised values of the Al-Karnak Hotel in Egypt; real property value and net income of the Al-Yamamah Hotel in Egypt; two vehicles in plaintiff's possession; proceeds derived from the "mutual business Peace, Faith and Love, LLC"; reimbursement for unpaid mortgage payments; bank accounts in the United States and Egypt; return of child support payments; and plaintiff's retirement account.

According to defendant, plaintiff never disclosed these assets and properties on her case information statement (CIS) but claimed they were a "family inheritance" and exempt from equitable distribution. Defendant also requested an "analysis" of plaintiff's alimony obligation and equitable distribution of his student loan debt incurred during the marriage.

Defendant certified that the "proofs" submitted with his cross-motion were not submitted earlier because plaintiff "concealed the evidence" from him, and it took "a long and hard time to collect most of the evidence, especially in Egypt." Defendant claimed plaintiff's income "is much more than her present

7

salary" because she "owns real properties" and other assets, which requires the court to consider an alimony award to defendant.

In opposition to plaintiff's motion, defendant certified he still owed plaintiff monies and has not refrained from paying her "in bad faith," and requested a "stay" on his financial obligations to her pending a resolution of the equitable distribution issues.

In reply, plaintiff certified that ownership of the apartment was transferred to the parties' children; rental income was spent on the children's tuition; Noha Tours, LLC and its office space were acquired with inherited funds and are immune from equitable distribution; Peace, Faith and Love, LLC has been inactive since 2018; the vehicles were purchased with no money down and defendant made the payments; both parties have comparable incomes, and therefore, alimony is not appropriate; the bank accounts have a de minimus value of approximately $200; and the Trenton Public School District should have reimbursed defendant for the student loan debt because he took the courses associated with the debt while employed by the School District.

On December 15, 2023, the judge conducted oral argument on the motions. During oral argument, defendant acknowledged that the assets—which

8

he now claimed are subject to equitable distribution—were known to him during the divorce litigation.

Following oral argument, the judge entered a thirty-one-page order granting plaintiff's motion and denying defendant's cross-motion under the doctrine of laches and Rules 4:50-1 and -2. The judge highlighted that the complaint for divorce was filed on January 18, 2018, and defendant waited "nearly six years" after the date of the complaint and "[nine] months" since the February 28, 2022 order, which addresses financial issues, to now claim equitable distribution of other assets. The judge emphasized that the February 28, 2022 order "expressly addressed the issues of equitable distribution" and rejected defendant's claim there were any outstanding issues.

Regarding the alimony claim, the judge determined it was improperly raised procedurally in defendant's cross-motion procedurally and was "based on conjecture regarding [p]laintiff's unearned income." The judge found the doctrine of laches applied to bar most of the relief requested by defendant in his cross-motion except for claims regarding plaintiff's retirement account and vehicles, because he "failed to timely move to address support and equitable distribution issues." The judge pointed out that defendant "only seeks to raise financial issues" in response to plaintiff's motion to enforce his obligations.

9

The judge also denied defendant's cross-motion to alter or vacate the amended JOD under Rule 4:50-1(a), (b), (c), and (f). The judge reasoned that defendant failed to establish any mistake, newly discovered evidence or fraud as required by the Rule. The judge noted defendant's application "purports to be premised on 'original purchase contracts,'" which prove plaintiff's claims regarding family inheritance are "untrue." However, the judge determined defendant gave "no explanation" as to why he was not able to use "due diligence" and obtain the information sooner.

Citing Rule 4:50-2, the judge found defendant's cross-motion was untimely because it was not made "within a reasonable time," and was filed more than one year after and nine months after equitable distribution was ordered, and six years after the complaint was filed.

Regarding the property acquired by plaintiff in Egypt by inheritance, the judge found "there is no evidence to the contrary" and defendant's "outrageous delay" in seeking equitable distribution is barred because he failed to demonstrate the property was acquired through either parties' income or efforts. The judge awarded defendant discovery regarding plaintiff's retirement account and vehicles, which is not challenged on appeal. The judge denied defendant's

cross-motion seeking to equitably distribute his student loan debt for the same reasons. This appeal followed.

Before us, defendant argues the judge erred by applying the doctrine of laches preventing defendant from obtaining relief and failed to order a plenary hearing despite several material factual disputes.

## II.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Id. at 283 (quoting Cesare, 154 N.J. at 411-12).

Deference does not extend to legal issues, which are subject to de novo review. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017). "[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004).

11

We defer to the credibility determinations made by the trial court because the trial court "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). However, "[a]ll 'legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review.'" Slutsky v. Slutsky, 451 N.J. Super. 332, 344-45 (App. Div. 2017) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

A.

Defendant argues that the judge abused his discretion by applying the doctrine of laches, thus preventing defendant from obtaining relief because there were equitable distribution issues that were not explicitly addressed in the amended JOD. Plaintiff counters that the doctrine of laches was properly applied.

Broadly, laches is "'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 580 U.S. 328, 333 (2017) (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667, 678 (2014)). Under New Jersey law, "[l]aches is an equitable doctrine, operating

12

as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417-18 (2012).

"Unlike the mechanical application of a fixed time prescribed by a statute of limitations," id. at 418, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court," Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004). "The key ingredients" to the applicability of laches "are knowledge and delay by one party[,]" coupled with a detrimental "change of position by the other [party]." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002). Thus, factors considered in determining whether to apply laches include "[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay." Ibid. (quoting Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 152 (1982)). "While laches does not arise from delay alone," inequity "more often than not, will turn on whether a party has been misled to his harm by the delay." Ibid. (quoting Lavin, 90 N.J. at 153).

Defendant argues the judge erred in denying the relief sought in his cross-motion based on the doctrine of laches because equitable distribution issues were not explicitly addressed in the amended JOD. Defendant also contends

plaintiff "withheld information" from the court, both through documents not available at the time and by not listing the properties on her CIS. Plaintiff counters defendant was in possession of information, which "he apparently always knew," that required further litigation on issues already addressed in the amended JOD but waited six years to file his cross-motion.

Applying these principles, we agree with the judge that the doctrine of laches bars the bulk of defendant's claims. The cross-motion was untimely and there was motion practice post-divorce in 2022 and 2023, but defendant did not raise any issues with respect to equitable distribution. Moreover, the judge questioned defendant during the motion hearing on this very issue:

> [JUDGE]: There were motions filed in 2022. There were motions filed earlier in 2023. Why was there never a contention by you with respect to equitable distribution of that piece of real property that you've known about by your own admission for years?
>
> [DEFENDANT]: . . . Your Honor, I was hoping to resolve that.
>
> [JUDGE]: . . . how long were you hoping to resolve it? Years?
>
> [DEFENDANT]: I admit it's my mistake . . .
>
>     . . . .

14

[JUDGE]: How have you not waived your right when you have not raised it before the [c]ourt for years when you knew about it for years?

[DEFENDANT]: I[—]it's my mistake. . . . I[—] sometimes was about to give up my rights which are my true rights, but when I kept being fed with because they had to be based on that was the penalty and I'm now forced to also show my interest, show my credit I deserve.

In denying defendant's cross-motion, the judge correctly determined there was clear prejudice arising from defendant's delay in pursuing his purported equitable distribution and other claims. Defendant was undisputably aware of plaintiff's alleged "hidden assets" because he admitted he knew these assets existed during his colloquy with the judge. Moreover, defendant explained he was trying to resolve the issues regarding plaintiff's assets as a reason for his delay in filing his cross-motion. Based on these facts, reasonable diligence dictates that defendant should have timely filed a motion seeking relief. Defendant's failure to do so resulted in prejudice to plaintiff, justifying denial of his cross-motion under the doctrine of laches.

B.

The judge also denied defendant's cross-motion under Rule 4:50-1(f). A decision to grant or deny vacatur of a judgment under Rule 4:50-1 is reviewed for an abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449,

15

467 (2012). Reversal may be warranted "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). The same deference is not extended where "a judge makes a discretionary decision but acts under a misconception of the applicable law or misapplies the law to the facts." D.M.C. v. K.H.G., 471 N.J. Super. 10, 27 (App. Div. 2022) (citation omitted).

Due to the special expertise in family matters, a reviewing court should "defer to the [family] court's determinations 'when supported by adequate, substantial, credible evidence.'" N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (quoting N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008)). In family matters, "'substantial weight' must be given to the judge's observations of the parties' 'demeanor, comprehension and speech' when they appeared before the court." Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (quoting Barrie v. Barrie, 154 N.J. Super. 301, 307 (App. Div. 1977)). We likewise defer to a trial court's evidentiary ruling absent an abuse of discretion. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019).

Rule 4:50-1(f) provides that a court may relieve a party from a final judgment or order for "any . . . reason justifying relief from the operation of the judgment or order." To prevail under this subsection, a movant must demonstrate "exceptional circumstances," In re Estate of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006), such that enforcement of the order would be "unjust, oppressive[,] or inequitable." 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 367 (App. Div. 2023) a'ffd as modified, 259 N.J. 417 (2025) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 5.6.1 on R. 4:50-1 (2025)).

Relief under the Rule should be granted sparingly. F.B. v. A.L.G., 176 N.J. 201, 207 (2003); Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283-84 (1994). A movant is therefore entitled to a hearing on the application only upon showing a genuinely disputed issue of material fact. Barblock v. Barblock, 383 N.J. Super. 114, 123-24 (App. Div. 2006); see also Harrington v. Harrington, 281 N.J. Super. 39, 47 (noting that not every factual dispute in a matrimonial action requires a plenary hearing).

Here, the judge did not abuse his discretion under Rule 4:50-1(f). Defendant's delay was significant, and he did not provide a justifiable reason as to why he sat on his rights for six years after the complaint was filed. Given

17

these facts, the judge found defendant failed to establish any exceptional circumstances to set aside the amended JOD, which the judge noted "essentially codified the resolution of financial issues from the February 28, 2022 order." Equally unavailing is defendant's argument that he could establish grounds under Rule 4:50-1(a)-(c) because his cross-motion was untimely under Rule 4:50-2, which is not subject to relaxation. The judge was correct in his analysis.

III.

Defendant next argues the judge abused his discretion in denying his request for discovery and a plenary hearing because there were genuine issues of material fact regarding plaintiff's interests in certain properties. Defendant contends the disputes involve whether plaintiff inherited the properties and whether she has a minimal or no interest in the properties. Plaintiff counters that the judge did not abuse his discretion in denying discovery and a plenary hearing because there was no factual dispute to resolve.

This court generally defers to the family court in its decision whether or not to grant a plenary hearing. Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012); see also Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (holding that we apply an abuse of discretion standard to a trial court's determination regarding the need for a plenary hearing). "[I]t is only where the

affidavits show that there is a genuine issue as to a material fact, and that the [family] judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." Jacoby, 427 N.J. Super. at 123 (quoting Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)).

A plenary hearing is necessary " 'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve." Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (alteration in original) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)). Where the need for a plenary hearing is not as obvious, the movant must make a prima facie showing that the plenary hearing is necessary. Hand, 391 N.J. Super. at 106 (alteration in original).

From the onset, we note that defendant raises these issues for the first time on appeal. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). For the sake of completeness, we add the following comments.

As stated, defendant waited years to file his cross-motion. He presented no competent evidence to establish even a prima facie basis for a modification of the amended JOD, such as concealment or destruction of evidence. We reiterate that defendant admitted that he knew about plaintiff's assets during the divorce litigation but failed to explain why he did not address them sooner. Equally unavailing is defendant's argument that he hoped to resolve these matters. Contrary to defendant's contention, the judge did not inappropriately take plaintiff "at her word."

The judge did not abuse his discretion in not ordering discovery on the challenged issues or a plenary hearing. To the extent that we have not addressed any remaining arguments, it is because they are without sufficient merit to warrant a discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division