**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1481-24

ELLEN Z. MELICK, a/k/a
ELLEN Z. GERBER,
ELLEN Z. SHERRER,

     Plaintiff-Respondent,

v.

DAVID R. MELICK,

     Defendant-Appellant.

_____

          Submitted February 24, 2026 – Decided March 10, 2026

          Before Judges Susswein and Chase.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FM-21-0083-95.

          Shaw Divorce & Family Law, LLC, attorneys for appellant (Andrew M. Shaw, on the briefs).

          Laemers Murphy & Neggia, LLC, attorneys for respondent (Doreen L. Neggia, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant David Melick appeals from a January 7, 2025, Family Division order. The court granted plaintiff Ellen Melick's motion to enforce the parties' 1997 Final Judgment of Divorce ("FJOD") which awarded her a coverture portion of defendant's 401K plan ("Plan"), through a Qualified Domestic Relations Order ("QDRO"). We affirm.

I.

The parties were married in 1977 and divorced in 1997. The FJOD awarded plaintiff fifty percent of the value of defendant's Plan, calculated from the date of marriage through the filing of the divorce complaint. Defendant agreed to cooperate in transferring the money.

In 1999, the court entered an order compelling defendant to complete necessary paperwork to divide his Plan per the FJOD. Despite this, the parties never completed the QDRO. In 2010, defendant rolled over his Plan into an IRA in his sole name.

Defendant retired at the end of 2021. Plaintiff retained counsel in early 2022 to assist with effectuating the division of the Plan. After realizing that defendant's former employers no longer held the records of defendant's Plan, plaintiff's attorney asked defendant if he had withdrawn or transferred the funds.

2

Defendant responded confirming the employer his Plan was with and responding "N/A" to whether he withdrew or transferred his funds. Following this, plaintiff's attorney contacted the retirement plan manager of one of defendant's former employers who responded that defendant no longer had a balance in his Plan.

After defendant provided signed authorizations, the following information regarding defendant's Plan was determined: full distribution of his account balance occurred in 2010; the gross amount of this distribution was $188,342.66; this payment was issued as a rollover to an IRA; the account balance in 1995 was $67,744.96 (plaintiff's one-half share would have been $33,872); and the account balance in 1996 was $87,131.38.

Plaintiff then hired Pension Appraisers to complete an interest calculation based on the $33,872 balance as of March 31, 1995. Based on the average General Agreement on Tariffs and Trade ("GATT") method[1], Pension Appraisers found the total owed to plaintiff should be $117,642.

---

[1] This method of interest calculation refers to a specific formula used to calculate lump sum present values of certain retirement benefits in defined benefit pension plans. It uses interest rates derived from the GATT and mortality assumptions to determine the present value of future pension payments. The interest rate used under the GATT method is based on the 30-year Treasury bond rate. In 2006 the Pension Protection Act established a new

A-1481-24

In November 2024, plaintiff moved to enforce litigant's rights, seeking to compel defendant to divide his Plan in accordance with the parties' FJOD along with interest under GATT, attorney's fees, and other relief. On December 19, 2024, defendant cross-moved to deny plaintiff's motion in its entirety. Alternatively, defendant sought to limit plaintiff's entitlement to $35,000, representing the maximum potential value of plaintiff's share of the Plan as of the cut-off date set forth in the FJOD. Defendant also requested that, if the trial court determined plaintiff was entitled to interest, such interest be limited to simple interest calculated in accordance with Rule 4:42-11, rather than GATT.

After the court heard oral argument, it entered a written opinion determining that the doctrine of laches was inapplicable. The court found plaintiff did not fail to assert a right within a reasonable time because plaintiff alleged that her attorney, who was retained at the time of her divorce, advised her that she would not be able to receive her share of defendant's retirement plan until defendant retired. Moreover, the court noted that when defendant retired at the end of 2021, plaintiff immediately retained counsel in early 2022 to assist with effectuating the division of the Plan. The court also stated that there was

---

framework for calculating lump-sum present values, replacing the GATT method.

no prejudice to defendant as he did not contend or establish that he changed his position as a result of the delay. Lastly, the court noted that "[p]laintiff continues to seek the distribution of the [Plan] funds, while [d]efendant continues to hold these funds in an IRA account."

After ruling that plaintiff was entitled to her share of the coverture portion, the court then moved to determine if she was entitled to interest. The court outlined our state's policy of favoring enforcement of marital agreements and the basic principles of fairness and equity. The court then wrote:

> Here, the parties' JOD clearly states that the principal amount that Plaintiff is entitled to is calculated from the date of the parties' marriage to the date of the filing of the divorce complaint. The Plaintiff certifies that the principal amount of Plaintiff's share of Defendant's 401K is $33,872. Defendant certifies that the maximum amount of the principal is $35,000. Both parties certify that the exact amount of interest that the Plaintiff's share accrued since that time is not able to be determined. The Plaintiff's share was rolled over into a different IRA when Defendant changed employers and co-mingled with other funds. Defendant certifies that financial statements are not available to trace the funds.
>
> . . . . At the time of the divorce, the Plaintiff bargained for 50% of Defendant's 401K. Were the distribution to have taken place at that time, the amount would have accrued interest. Certainly, the Plaintiff's share has accrued interest while remaining in Defendant's IRA account. If the court were to grant Defendant's request that only $35,000 be awarded to the Plaintiff, Defendant would be unjustly enriched by the

5

significant amount of interest that has accrued on Plaintiff's share. This is an inequitable result based upon a delay that was prolonged by the inaction of both parties. As a threshold matter, the court finds that Plaintiff is entitled to interest accrued on her share of the 401K. Therefore, Defendant's request to limit the amount owed to Plaintiff to $35,000 is denied.

The court determined that defendant's request to give interest under Rule 4:42-11 was more equitable than the plaintiff's preferred method of accruing interest under GATT. As such, the court ordered $107,406 to be transferred to plaintiff.

This appeal follows.

## II.

It is well established that reviewing courts accord substantial deference on appeal to the decisions of Family Part judges. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Pascale v. Pascale, 113 N.J. 20, 33 (1988). Given the Family Part's special expertise, we owe deference to the court's findings in such cases, and to the conclusions that logically flow from those findings. Cesare, 154 N.J. at 412-13.

A court's decision to grant or deny enforcement of a matrimonial agreement, including the entry of relief to secure compliance with equitable distribution orders, is reviewed for abuse of discretion. Quinn v. Quinn, 225

NJ. 34, 42-43 (2016). The application of laches "depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2012) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)). We also review application of the laches doctrine under the abuse of discretion standard. United States v. Scurry, 193 N.J. 492, 504 (2008). So too is the denial of a plenary hearing, which will be upheld unless the court abused its discretion by refusing to consider genuinely disputed issues of material facts. Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995).

III.

Defendant argues the court erred in not barring plaintiff's claim under the doctrine of laches. We disagree.

Laches is an equitable doctrine, utilized to achieve fairness. Fox v. Millman, 210 N.J. 401, 422 (2012). Laches arises from "the neglect, for an unreasonable and unexplained length of time . . . to do what in law should have been done." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 151 (1982) (quoting Atl. City v. Civil Serv. Comm'n, 3 N.J. Super. 57, 60 (App. Div. 1949)). The doctrine bars "the prosecution of an equitable claim if the suitor has inexplicably, inexcusably and unreasonably delayed pursuing a claim to the

prejudice of another party." In re Est. of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013) (citing Knorr v. Smeal, 178 N.J. 169, 180-81 (2003)); see also Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 171-72 (Law Div. 1994), aff'd, 287 N.J. Super. 114 (App. Div. 1996). "The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Knorr v. Smeal, 178 N.J. at 181 (citing Lavin, 90 N.J. at 152-53).

Neither the fact that the FJOD was silent as to which party had the responsibility to effectuate the QDRO or failed to state a date certain for the QDRO to be completed, negates plaintiffs right to her bargained-for share of defendant's Plan. The silence opens the door for a court to determine the fairness and equity of the facts specific to this matter.

Acknowledging that there was a long delay, the court reasoned that the reason for the delay was in good faith. Plaintiff sought the advice of her prior attorney over the years and believed that a QDRO could not be executed immediately because she could not receive her share of defendant's account until he retired. Although plaintiffs' delay in enforcing the FJOD stemmed from mistaken belief in her understanding, it was reasonable. Moreover, the delay

caused no prejudice to defendant. He retained control over the funds for over a decade, never informing plaintiff of its depletion, and continued to accrue interest on the account. "Here, defendant exhibited no prejudice flowing from the delay. . . . Although he asserts that plaintiff should have moved for enforcement of the provision earlier, he fails to explain his own neglect in moving to extinguish the obligation during the same interval." Hoff v. Hoff, 157 N.J. Super. 503, 509 (App. Div. 1978). Based on the specific facts present, the court did not abuse its discretion in determining laches did not apply.

We are also unpersuaded by defendant's argument, raised for the first time on appeal, that because plaintiff failed to seek enforcement of her right to the QDRO for more than twenty years after the FJOD was entered she should be barred from raising the claim under N.J.S.A. 2A:14-5. The rights of the parties were established in the final judgment and remained enforceable even after years of delay. Menake v. Menake, 348 N.J. Super. 442 (App. Div. 2002). The QDRO does not create a new right or an independent cause of action; rather, it is the procedural vehicle that effectuates the substantive rights previously established in the divorce decree. Ross v. Ross, 308 N.J. Super. 132, 139-40 (App. Div. 1998). Plaintiff's interest in her defendant's retirement asset vested at divorce, even though neither party prepared a QDRO to actually transfer the money until

shortly after defendants' retirement. Thus, the absence of a QDRO did not affect the enforceability of her claim.

We are also convinced that the court acted within its discretion when it granted interest on the amount owed. Interest is awarded in accordance with equitable principles, not as a penalty, but to make the injured party whole. George H. Swatek, Inc. v. North Star Graphics, Inc., 246 N.J. Super. 281, 286-87 (App Div 1991). The award lies within the sound discretion of the trial court and should not be disturbed absent abuse. Graziano v. Grant, 326 N.J. Super. 328, 343 (App. Div. 1999).

It is clear public policy that equitable distribution is based on the theory that marriage is a joint undertaking. While this does not presume that all assets will be shared equally, it is fair and reasonable to presume that had a QDRO been prepared, the plaintiff would receive the benefit of market increases on her portion of the Plan. Interest restores plaintiff for two decades' deprivation of her funds and prevents defendant's unjust enrichment. Thus, the court properly awarded interest.

Once the court determined interest was equitable, it did so under Rule 4:42-11, the method that defendant requested. The purpose of interest under Rule 4:42-11 is to ensure that a successful claimant is compensated for the loss

A-1481-24

of the ability to use money rightfully due.  Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 390 (2009).  The court was well within its discretion to award interest under Rule 4:42-11, as the FJOD is silent as to the interest rate.

We also reject the defendant's contention that a plenary hearing was required in the circumstances presented.  A plenary hearing is not inexorably required in every post-judgment matrimonial dispute.  See R. 5:8-6 (requiring plenary hearings in custody matters only where the contested issues are "genuine and substantial"); Barblock v. Barblock, 383 N.J. Super. 114, 124 (App. Div. 2006) (no plenary hearing was required to authorize mother's relocation of her children out of state, over the father's objection, where no material factual disputes were demonstrated).  Defendant has come forward with no evidence showing that there were substantial facts in dispute that would alter the outcome.  It follows that the court engaged in a proper exercise of discretion when it decided this dispute on the pleadings and certifications.

To the extent we have not addressed any other arguments, they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

11

A-1481-24